*ORAL ARGUMENT NOT YET SCHEDULED*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 14-5196

---

GEORGE R. JARKESY, JR., AND PATRIOT28, LLC,
*Plaintiffs-Appellants*,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,
*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the District of Columbia

---

## BRIEF OF THE DEFENDANT-APPELLEE,
## U.S. SECURITIES AND EXCHANGE COMMISSION

---

RICHARD M. HUMES
Associate General Counsel

SAMUEL M. FORSTEIN
Assistant General Counsel

DOMINICK V. FREDA
Senior Litigation Counsel

SARAH E. HANCUR
Senior Counsel

U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-9612
(202) 551-5194 Tel. (Hancur)
(202) 772-9263 Fax
hancurs@sec.gov

January 28, 2015

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

**A.**    **Parties**

George R. Jarkesy, Jr. and Patriot28, LLC were the plaintiffs in the district court and are the appellants in this Court.

The United States Securities and Exchange Commission was the defendant in the district court and is the appellee in this Court.

**B.**    **Ruling Under Review**

The ruling under review is United States District Judge Beryl A. Howell's June 10, 2014 Memorandum Opinion and Order, dismissing the action for lack of subject-matter jurisdiction.  (JA 278, 291)

**C.**    **Related Cases**

This case has not previously been before this Court.  Counsel for the United States Securities and Exchange Commission is not aware of any related cases.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF AUTHORITIES ...................................................................iv

GLOSSARY........................................................................................x

COUNTERSTATEMENT OF JURISDICTION .....................................xi

STATUTES AND REGULATIONS .......................................................1

COUNTERSTATEMENT OF THE ISSUE...............................................1

COUNTERSTATEMENT OF THE CASE...............................................1

    A.    Nature of the case .................................................................1

    B.    Statutory scheme .................................................................2

    C.    Facts...................................................................................5

        1.    The OIP and Jarkesy's assertion of constitutional "affirmative defenses" ...............................................5

        2.    Jarkesy sought interlocutory review of the ALJ's rejection of further constitutional defenses he raised during the administrative proceeding .........................................6

        3.    After conducting an extensive hearing, the ALJ issued an initial decision finding that Jarkesy violated the federal securities laws and rejecting Jarkesy's constitutional challenges to the administrative proceeding............................8

        4.    Jarkesy filed a petition for review with the Commission ..........9

    D.    District court proceedings .................................................10

STANDARD OF REVIEW ..................................................................11

ii

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT .....................................................................................14

I.     The federal securities laws provide an exclusive avenue for review
       that Jarkesy may not bypass by filing suit in district court ..........14

       A.     Under Supreme Court jurisprudence, the question is whether it
              is "fairly discernible" that Congress intended to channel judicial
              review through the Commission's administrative process ................14

       B.     It is "fairly discernible" that Congress intended to channel
              judicial review through the Commission's administrative
              process ...............................................................19

       C.     There is no exception to *Thunder Basin* for "facial"
              constitutional challenges ......................................26

       D.     Jarkesy's action does not satisfy the narrow exception that
              would allow him to avoid this exclusive statutory review
              scheme ...............................................................31

              1.     Jarkesy can obtain meaningful judicial review of his
                     claims ......................................................31

              2.     Jarkesy's suit is not "wholly collateral" to the review
                     scheme ......................................................38

              3.     Jarkesy's claims are not outside the Commission's
                     expertise ....................................................42

II.    The merits of Jarkesy's constitutional claims are not properly before
       this Court at this time ..........................................44

CONCLUSION ...................................................................47

CERTIFICATE OF COMPLIANCE ..................................48

# TABLE OF AUTHORITIES

## Cases

*Allan v. SEC*,
   577 F.2d 388 (7th Cir. 1978) .........................................................22

*Altman v. SEC*,
   768 F. Supp. 2d 554 (S.D.N.Y. 2011) ......................................22, 23

*Altman v. SEC*,
   666 F.3d 1322 (D.C. Cir. 2011) ...................................................34

*\*Altman v. SEC*,
   687 F.3d 44 (2d Cir. 2012) ...........................................22, 23, 24, 34

*Arjent, LLC  v. SEC*,
   7 F. Supp. 3d 378 (S.D.N.Y. 2014) ...............................................33

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ....................................................................16

*Calais Res. Inc.*,
   Exchange Act Release No. 34-67312,
   2012 WL 2499349 (June 29, 2012) ............................................. 36

*Califano v. Sanders*,
   430 U.S. 99 (1977) ......................................................................31

*Chau v. SEC*,
   No. 14-cv-1903, 2014 WL 6984236
   (S.D.N.Y. Dec. 11, 2014) ...........................................22, 24, 37, 38

*Checkosky v. SEC*,
   23 F.3d 452 (D.C. Cir. 1994) .......................................................37

*CleanTech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*,
   No. 11-cv-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) .....................23

*Coal River Energy, LLC, v. Jewell*,
　　751 F.3d 659 (D.C. Cir. 2014)......................................................................18

*Daniels v. Union Pac. R.R. Co.*,
　　530 F.3d 936 (D.C. Cir. 2008)..............................................15, 18, 27, 28, 41

*Dist. of Columbia v. Air Florida, Inc.*,
　　750 F.2d 1077 (D.C. Cir. 1984).....................................................................45

*Elgin v. Dep't of the Treasury*,
　　132 S. Ct. 2126 (2012)........................................... 13, 16, 17, 18, 20, 21, 26,
　　　　　　　　　　　　　　　　　　　　　　27, 31, 35, 38, 39, 41, 42, 44

*Fornaro v. James*,
　　416 F.3d 63 (D.C. Cir. 2005)...................................................................18, 27

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
　　561 U.S. 477 (2010)........................................... 13, 16, 30, 31, 32, 33, 38, 41

*Gen. Elec. Co. v. EPA*,
　　360 F.3d 188 (D.C. Cir. 2004)..................................................................29, 30

*Gen. Elec. Co. v. EPA*,
　　610 F.3d 110 (D.C. Cir. 2010)......................................................................30

*Gupta v. SEC*,
　　796 F. Supp. 2d 503 (S.D.N.Y. 2011) ..........................................................37

*Heckler v. Ringer*,
　　466 U.S. 602 (1984).......................................................................................39

*John Doe, Inc. v. DEA*,
　　484 F.3d 561 (D.C. Cir. 2007).....................................................16, 18, 28, 35

*Johnson v. Robison*,
　　415 U.S. 361 (1974)..................................................................................29, 33

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　　511 U.S. 375 (1994).......................................................................................12

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991)...............................................................27, 28, 33

*Mister Disc. Stockbrokers, Inc. v. SEC*,
    768 F.2d 875 (7th Cir. 1985) .......................................................22

*Oakey v. US Airways Pilots Disability Income Plan*,
    723 F.3d 227 (D.C. Cir. 2013)..................................................11, 12

*optionsXpress, Inc.*,
    Securities Act Release No. 9466, 2013 WL 5635987 (Oct. 16, 2013) .........36

*Pollack v. Hogan*,
    703 F.3d 117 (D.C. Cir. 2012)....................................................44

*Seghers v. SEC*,
    548 F.3d 129 (D.C. Cir. 2008)....................................................34

*\*Shalala v. Ill. Council on Long Term Care*,
    529 U.S. 1 (2000)..................................................14, 15, 35, 42, 43

*Sheldon v. SEC*,
    45 F.3d 1515 (11th Cir. 1995) ....................................................34

*\*Sturm, Ruger & Co. v. Chao*,
    300 F.3d 867 (D.C. Cir. 2002)........................................ 13, 18, 19, 25, 39, 40

*\*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984).....................................................13, 15, 18, 25

*\*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994)............................... xi, 11,  13, 16, 17, 20, 21, 24, 33, 43

*Time Warner Entm't Co. v. FCC*,
    93 F.3d 957 (D.C. Cir. 1996)....................................................30, 41

*United States v. Salerno*,
    481 U.S. 739 (1987)..............................................................46

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007)........................................................22

*Weinberger v. Salfi*,
    422 U.S. 749 (1975)........................................................15

## Statutes, Regulations, and Rules

The Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*

15 U.S.C. § 77i(a) ........................................................5, 20

The Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

15 U.S.C. § 78u(d)........................................................3

15 U.S.C. § 78u-1 ........................................................3

15 U.S.C. § 78u-2 ........................................................3, 19

15 U.S.C. § 78u-3 ........................................................3, 19

15 U.S.C. § 78u-3(c)........................................................21

15 U.S.C. § 78u-3(d)........................................................21

15 U.S.C. § 78u-3(d)(2)........................................................21

15 U.S.C. § 78u-3(d)(4)........................................................21

15 U.S.C. § 78y(a) ........................................................20

15 U.S.C. § 78y(a)(1) ........................................................5, 32

15 U.S.C. § 78y(a)(2) ........................................................5, 20, 32

15 U.S.C. § 78y(a)(3) ........................................................5

15 U.S.C. § 78y(a)(4) ........................................................5, 20

15 U.S.C. § 78y(a)(5) ...................................................................5, 20, 37

15 U.S.C. § 78y(c)(1) ......................................................................20, 27

15 U.S.C. § 78y(c)(2) ........................................................................5, 20

The Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq.*

15 U.S.C. § 80b-13(a)........................................................................5, 20

The Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*

15 U.S.C. § 80a-42(a) ........................................................................5, 20

28 U.S.C. § 1291 ....................................................................................xi

28 U.S.C. § 1331 ....................................................................................15

17 C.F.R. § 201.100 *et seq* .....................................................................3

17 C.F.R. § 201.110 .................................................................................3

17 C.F.R. § 201.220 .................................................................................3

17 C.F.R. § 201.222 .................................................................................3

17 C.F.R. § 201.230 .......................................................................3, 42, 43

17 C.F.R. § 201.232 .......................................................................3, 36, 42

17 C.F.R. § 201.320 .................................................................................3

17 C.F.R. § 201.323 ...........................................................................3, 36

17 C.F.R. § 201.326 .................................................................................3

17 C.F.R. § 201.360 ...........................................................................4, 42

17 C.F.R. § 201.400 .................................................................................4

17 C.F.R. § 201.410 ................................................................................4

17 C.F.R. § 201.411 ................................................................................4

17 C.F.R. § 201.452 ........................................................................4, 36, 38

Fed. R. App. P. 28 ................................................................................xi

Fed. R. App. P. 32 ................................................................................48

## **Other Authorities**

S. Rep. No. 101-337 (1990) ....................................................................22

H.R. Rep. No. 101-616 (1990) ..................................................................22

*John Thomas Cap. Mgmt. Grp. LLC*,
    Exchange Act Release No. 71021, 2013 WL 6384275 (Dec. 6, 2013).....7, 43

*John Thomas Cap. Mgmt. Grp. LLC*,
    Exchange Act Release No. 71415, 2014 WL 294551 (Jan. 28, 2014)......7, 43

Feb. 14, 2014 Commission Order,
    http://www.sec.gov/alj/aljorders/2014/ap-1242.pdf.................................8, 37

*John Thomas Cap. Mgmt. Grp. LLC*,
    Exchange Act Release No. 73375, 2014 WL 5282156 (Oct. 16, 2014) .........7

*Initial Decision as to John Thomas Cap. Mgmt. Grp. LLC*,
*d/b/a/ Patriot28 LLC, and George R. Jarkesy, Jr.*,
    Initial Decision Release No. 693 (Oct. 17, 2014),
    http://www.sec.gov/alj/aljdec/2014/id693cff.pdf .......................................8, 9

Dec. 11, 2014 Commission Order Granting Review and Scheduling Briefs,
    http://www.sec.gov/litigation/opinions/2014/33-9688.pdf ..........................10

\*  Authorities upon which this brief chiefly relies are marked with an asterisk.

# GLOSSARY

| | |
|---|---|
| Advisers Act | Investment Advisers Act of 1940 |
| ALJ | Administrative law judge |
| APA | Administrative Procedure Act |
| Br. | Brief for Plaintiffs-Appellants George R. Jarkesy, Jr. and Patriot28, LLC |
| Commission or SEC | Securities and Exchange Commission |
| Company Act | Investment Company Act of 1940 |
| CSRA | Civil Service Reform Act of 1978 |
| Exchange Act | Securities Exchange Act of 1934 |
| JA | Joint Appendix |
| OIP | Order instituting proceedings |
| Securities Act | Securities Act of 1933 |

## COUNTERSTATEMENT OF JURISDICTION

The SEC provides the following jurisdictional statement pursuant to Fed. R. App. P. 28(b)(1):

### A.    Subject-Matter Jurisdiction of the District Court

The district court did not have subject-matter jurisdiction.  The district court correctly held that it lacked subject-matter jurisdiction to hear this challenge to a pending Commission administrative proceeding under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), "due to the extensive statutory scheme" that governs review of administrative proceedings by the SEC.  (JA 278)

### B.    Jurisdiction of this Court

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final and appealable decision on June 10, 2014.  (JA 291)

### C.    Timeliness

The district court's final decision was entered on June 10, 2014.  Appellants filed their notice of appeal on August 8, 2014, which was within 60 days after entry of the judgment being appealed.  This appeal is thus timely because the appellee is a United States agency.

### D.    Final Order

This appeal is from a final order of the district court that resolves all of appellants' claims.  (JA 291)

## STATUTES AND REGULATIONS

The SEC incorporates by reference the statutory provisions reproduced in the Statutory and Regulatory Addendum to the Brief for Plaintiff-Appellant George R. Jarkesy, Jr. and Patriot28, LLC ("Br.").

## COUNTERSTATEMENT OF THE ISSUE

Whether the district court correctly held that it lacked subject-matter jurisdiction to hear this declaratory and injunctive action to terminate the SEC's pending administrative enforcement proceeding due to the federal securities laws' exclusive review scheme, which provides for direct review in the courts of appeals?

## COUNTERSTATEMENT OF THE CASE

### A.    Nature of the case

Appellants George R. Jarkesy, Jr., and Patriot28, LLC (unless otherwise specified, collectively "Jarkesy") appeal from an order of the United States District Court for the District of Columbia (Howell, J.) dismissing Jarkesy's action seeking declaratory and injunctive relief to terminate a pending administrative enforcement proceeding brought by appellee United States Securities and Exchange Commission ("Commission" or "SEC"), which Jarkesy claims has been instituted and administered in violation of various constitutional provisions.  (JA 278, 291) The district court held that "[t]he statutory and regulatory regime under which the

- 1 -

SEC's Enforcement Division brought the instant matter against the plaintiffs precludes th[e] [c]ourt from exercising subject matter jurisdiction to hear the plaintiffs' claims" because Congress has channeled review of claims through the agency's processes with the opportunity for judicial review in a court of appeals at the conclusion of that process.  (JA 284)  "Although the plaintiffs raise various allegations of violations of their constitutional rights," the court held, "those claims are inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter," and Jarkesy must wait to raise them "before a Court of Appeals should the ALJ and the Commission issue orders adverse to [him]."  (JA 286)  Accordingly, recognizing that "the statute leaves no room for th[e] [c]ourt to provide [Jarkesy] the relief [he] seek[s]," the court dismissed Jarkesy's complaint for lack of subject-matter jurisdiction.  (JA 289)

### B.     Statutory scheme

The Securities Exchange Act of 1934 ("Exchange Act"), the Securities Act of 1933 ("Securities Act"), the Investment Advisers Act of 1940 ("Advisers Act"), the Investment Company Act of 1940 ("Company Act") (together, "federal securities laws"), and the regulations thereunder establish a comprehensive scheme for the commencement and review of civil enforcement actions by the Commission.  These laws give the Commission discretion to address potential

violations by filing an enforcement action in one of two forums—in federal district court or before the agency. *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3 (Exchange Act). For cases in which the Commission institutes an administrative proceeding, the SEC's Rules of Practice govern the course of proceedings and the conduct of the parties and their counsel. *See* 17 C.F.R. §§ 201.100 *et seq*.

The Rules of Practice provide, among other things, for filings and motions practice by the parties. *See, e.g., id.* § 201.220 ("Answer to Allegations"); *id.* § 201.222 ("Prehearing Submissions"). They also set forth the rules of discovery, including imposing disclosure obligations on the SEC's Division of Enforcement, which prosecutes these proceedings. *See, e.g., id.* § 201.230 ("Enforcement and Disciplinary Proceedings: Availability of Documents for Inspection and Copying"); *id.* § 201.232 ("Subpoenas"). Finally, the Rules of Practice prescribe the evidentiary rules applicable in administrative proceedings. *See, e.g., id.* § 201.320 ("Evidence: Admissibility"); *id.* § 201.323 ("Evidence: Official Notice"); *id.* § 201.326 ("Evidence: Presentation, Rebuttal and Cross-examination").

The Rules of Practice specify that each proceeding will be presided over by the Commission itself or, if the Commission so decides, an administrative law judge ("ALJ"), who will act as the "hearing officer." *Id.* § 201.110. During the pendency of an administrative proceeding, a party may seek interlocutory review

of any ruling by an ALJ by filing a petition with the full Commission, after first seeking certification to do so from the ALJ. *See id.* § 201.400. The Commission also may at any time direct *sua sponte* that any matter before an ALJ be submitted to the Commission for its own consideration. *See id.* At the conclusion of any proceeding in which an ALJ presides, the ALJ prepares an "initial decision." *Id.* § 201.360. A respondent may appeal the "initial decision" by filing a "petition for review" with the Commission, and the Commission may also choose to review such a decision "on its own initiative." *Id.* §§ 201.410(a), 201.411(c). The Commission engages in *de novo* review of the ALJ's decision, including permitting the submission of "additional evidence" where appropriate. *See id.* §§ 201.411(a), 201.452. Regardless of whether further review is sought, the Commission alone has the authority to issue an order of finality, specifying the date on which sanctions, if any, take effect. *See id*. § 201.360(d)(2), 411(a).

In similarly worded provisions, the federal securities laws provide for review in the courts of appeals of final orders of the Commission. For example, Section 25(a)(1) of the Exchange Act provides, in relevant part, that:

> A person aggrieved by a final order of the Commission … may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

- 4 -

15 U.S.C. § 78y(a)(1) (Exchange Act); *see also* 15 U.S.C. § 77i(a) (Securities Act); 15 U.S.C. § 80b-13(a) (Advisers Act); 15 U.S.C. § 80a-42(a) (Company Act). Upon the filing of a petition for review, the court of appeals "has jurisdiction, which becomes exclusive on the filing of the record," to "affirm or modify and enforce or to set aside the order in whole or in part." *Id.* § 78y(a)(3).

Section 25(a) also prescribes a comprehensive process for appellate review of final Commission orders, including:  what constitutes the agency record (§ 78y(a)(2)); the standard of review of the Commission's factual findings (§ 78y(a)(4)); and the process for seeking a stay of the Commission order either before the Commission or in the court of appeals (§ 78y(c)(2)).  Either party may seek leave from the court of appeals to "adduce additional evidence" and the court "may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate." *Id.* § 78y(a)(5).  Following any such remand, the Commission "shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order." *Id.*

### C.    Facts

#### 1.    The OIP and Jarkesy's assertion of constitutional "affirmative defenses."

On March 22, 2013, the SEC issued an order instituting administrative proceedings ("OIP") against Jarkesy and Patriot28, as well as two other

- 5 -

respondents who are not parties to this appeal.  Patriot28 is an unregistered

investment adviser and general partner of two hedge funds.  Jarkesy, Patriot28's

manager, controls all of the firm's operations and activities.  The OIP alleged that,

among other things, Jarkesy recorded arbitrary valuations for certain of the funds'

holdings without a reasonable basis to do so—thus artificially inflating the funds'

performance figures and his own compensation—and marketed the funds on the

basis of false representations.  Jarkesy's co-respondents were alleged to have aided

and abetted and/or caused Jarkesy's violations of the securities laws.  (JA 91)

In Jarkesy's answer to the OIP, he denied the allegations and asserted

"affirmative defenses" arguing that, among other things, the administrative

proceeding violated his constitutional "right to a jury trial in a case seeking a civil

penalty."  Jul. 3, 2013 Answer, http://www.sec.gov/litigation/apdocuments/3-

15255-event-16.pdf.

> ### 2.    Jarkesy sought interlocutory review of the ALJ's rejection of further constitutional defenses he raised during the administrative proceeding.

During the course of the administrative proceeding, following ALJ rulings

rejecting his constitutional objections to the proceedings, Jarkesy filed three

petitions for interlocutory review by the Commission.  The Commission denied

these petitions, finding each time that Jarkesy's petition did not present issues that

justified interlocutory review but emphasizing that Jarkesy's "claimed

constitutional violations" are "'fully reviewable on appeal' in the ordinary course of the Commission's review under Rule of Practice 410 and any subsequent judicial review proceeding."  *John Thomas Cap. Mgmt. Grp. LLC* ("*JTCM III*"), Exchange Act Release No. 73375, 2014 WL 5282156, at *2, 4 (Oct. 16, 2014) (denying petition for interlocutory review of order rejecting motion to keep ALJ's pending initial decision "under seal" to avoid "irreparable harm" from what Jarkesy claimed would be an unconstitutional result); *John Thomas Cap. Mgmt. Grp. LLC* ("*JTCM I*"), Exchange Act Release No. 71021, 2013 WL 6384275 (Dec. 6, 2013) (denying petition for interlocutory review of order rejecting claims that the Division of Enforcement failed to comply with its disclosure obligations under Commission rules and *Brady v. Maryland*); *John Thomas Cap. Mgmt. Grp. LLC* ("*JTCM II*"), Exchange Act Release No. 71415, 2014 WL 294551 (Jan. 28, 2014) (denying petition for interlocutory review of order rejecting claim of prejudgment of case due to findings applicable only to Jarkesy's co-respondents made in the Commission's order accepting co-respondents' offer of settlement that expressly stated that it applied only to the settling co-respondents).[1]

---

[1]  The Settlement Order states that the "findings herein are made pursuant to [the co-respondents'] Offer of Settlement and *are not binding on any other person or entity* in this or any other proceeding."  *Id*. at 2; (JA 124) (emphasis added).

### 3.    After conducting an extensive hearing, the ALJ issued an initial decision finding that Jarkesy violated the federal securities laws and rejecting Jarkesy's constitutional challenges to the administrative proceeding.

A 12-day hearing was held in February and March 2014.  While the hearing was ongoing, Jarkesy requested that the ALJ issue a subpoena for documents to the SEC's Custodian of Records and a subpoena for hearing testimony to the SEC's Office of General Counsel concerning (1) the Commission's decision to accept Jarkesy's co-respondents' settlement offer; and (2) the Commission's decision to initiate the enforcement proceeding against Jarkesy as an administrative proceeding instead of as a district court proceeding.  The ALJ declined to issue the subpoenas because, she explained, they were untimely and unreasonably sought "evidence largely consisting of privileged internal Commission deliberations." Feb. 14, 2014 Order, http://www.sec.gov/alj/aljorders/2014/ap-1242.pdf.

The ALJ issued her initial decision on October 17, 2014.  *Initial Decision as to John Thomas Cap. Mgmt. Grp. LLC, d/b/a/ Patriot28 LLC, and George R. Jarkesy, Jr.*, Initial Decision Release No. 693 (Oct. 17, 2014) http://www.sec.gov/alj/aljdec/2014/id693cff.pdf.  The ALJ found that Jarkesy willfully violated antifraud provisions of the federal securities laws.  *Id.* at 24.  In her decision, the ALJ also rejected the constitutional challenges Jarkesy raised during the administrative proceeding.  Specifically, the ALJ rejected Jarkesy's due process and equal protection claims, finding that the Commission neither

- 8 -

prejudged Jarkesy's case nor engaged in improper *ex parte* communications with the Commission staff.  *Id.* at 2, 3.  The ALJ rejected Jarkesy's due process and equal protection challenges to the Commission's decision to seek civil penalties in an administrative proceeding rather than in district court, as well as Jarkesy's claim that civil penalties could not be assessed in the administrative proceeding because the Seventh Amendment guaranteed him a right to have these claims decided by a jury.  *Id.* at 7.

### 4.    Jarkesy filed a petition for review with the Commission.

On November 7, 2014, Jarkesy filed a Petition for Review of the ALJ's initial decision.  *See* Petition for Review, http://www.sec.gov/litigation/apdocuments/3-15255-event-143.pdf.  In his petition, Jarkesy raises many of the same constitutional arguments that he raised before the ALJ, including his due process, equal protection, *Brady*, and Seventh Amendment challenges to the administrative proceeding.  *See id.*; *see also* Respondents' Jan. 13, 2015 Opening Brief, http://www.sec.gov/litigation/apdocuments/3-15255-event-149.pdf.  In addition, Jarkesy filed with the Commission a Motion to Adduce Additional Evidence, in which he seeks, among other things, documents and testimony responsive to the subpoenas he previously requested, as well as the alleged *Brady* materials he earlier sought (*see supra* p. 8).  Jan. 13, 2015 Motion to Adduce Additional Evidence, http://www.sec.gov/litigation/apdocuments/3-15255-event-

146.pdf.  The Commission has not yet ruled on Jarkesy's motion, and briefing on

the merits of his petition is scheduled to be completed by March 23, 2015.  *See*

Dec. 11, 2014 Order Granting Review and Scheduling Briefs,

http://www.sec.gov/litigation/opinions/2014/33-9688.pdf.

As noted, if the Commission issues a final decision in the administrative

proceeding that is adverse to Jarkesy, Jarkesy may file a petition for review in an

appropriate court of appeals within sixty days.  *See supra* pp. 4-5.

### D.     District court proceedings

On January 29, 2014, five days before the start of the administrative hearing,

Jarkesy filed suit in district court seeking "emergency injunctive and declaratory

relief to prevent the SEC from proceeding with an administrative proceeding …

that has violated, and will continue to violate, [his] fundamental constitutional

rights."  (JA 8)  Specifically, Jarkesy raised the same constitutional arguments he

had raised in the administrative proceeding (and which are now before the

Commission on review of the ALJ's initial decision), including alleged violations

of due process (through prejudgment and *ex parte* communications), equal

protection, and the Seventh Amendment.  Jarkesy sought a temporary restraining

order and preliminary injunction to stay the administrative hearing and a

declaratory judgment that his various constitutional rights had been violated and

that these violations "nullified the AP."  (JA 24-26)

Two days later, the district court held a two-hour hearing on the motion for temporary restraining order.  The court then denied Jarkesy's motion from the bench, explaining that it was precluded from exercising subject-matter jurisdiction over Jarkesy's suit due to the exclusive statutory review scheme Congress created in the federal securities laws.  (JA 244-246)

On June 10, 2014, following a show cause order by the district court requesting briefing as to why Jarkesy's complaint should not be dismissed as moot in light of the conclusion of the Commission's administrative hearing, the district court entered the decision now under review by this Court.  The court dismissed the case for lack of subject-matter jurisdiction under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), "due to the extensive statutory scheme in the securities laws that govern this action."  (JA 278)  "Although the plaintiffs raise various allegations of violations of their constitutional rights," the court held, "those claims are inextricably intertwined with … the very enforcement proceeding," and "there is no dispute that the plaintiffs will have the opportunity to raise all of their constitutional claims before a Court of Appeals should the … Commission issue [an] order[] adverse to them."  (JA 286)

## STANDARD OF REVIEW

The Court reviews *de novo* the district court's dismissal of a case for lack of subject-matter jurisdiction.  *See, e.g.*, *Oakey v. US Airways Pilots Disability*

- 11 -

*Income Plan*, 723 F.3d 227, 231 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 1513 (2014).  Because this case was dismissed on jurisdictional grounds, not for failure to state a claim, Jarkesy's statement of the standard of review (Br. 17) is incorrect that "[i]n reviewing a district court's dismissal, 'so long as the pleadings suggest a 'plausible' scenario to 'show that the pleader is entitled to relief,' a court may not dismiss."   Rather, because "[i]t is to be presumed that a cause lies outside th[e federal courts'] limited jurisdiction," the "burden of establishing the contrary rests upon the party asserting jurisdiction."   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

## SUMMARY OF ARGUMENT

In his brief to this Court, Jarkesy raises (Br. 2) the same constitutional attacks on the Commission's administrative proceeding that he has raised before the Commission as well as in the district court below.  But he also attempts to recast some of these claims as "facial" challenges to Congress's delegation of authority to the Commission to bring a proceeding seeking civil penalties either administratively or in federal court.  Regardless of the label he affixes to his claims, however, the district court was correct in dismissing his case for lack of subject-matter jurisdiction.

The Supreme Court—as well as this Court—has repeatedly recognized that a plaintiff may not eschew Congress's decision to channel claims through an

agency's administrative process by challenging that process in district court.  *See, e.g., Thunder Basin*, 510 U.S. 200; *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126 (2012); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867 (D.C. Cir. 2002).  So long as it is "fairly discernible" that Congress intended to establish such an exclusive review scheme, a district court is without jurisdiction to entertain such a challenge—regardless of the nature of the claim.  *Elgin*, 132 S. Ct. at  2134-35.  It is "fairly discernible" from the text, purpose, and structure of the federal securities laws that Congress has created such a scheme here, and Jarkesy cannot establish the limited circumstances that would demonstrate that general federal-question jurisdiction nonetheless survives because appellate review is otherwise unavailable or inadequate to consider his challenge.  *E.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).

By dismissing Jarkesy's suit, the district court correctly avoided the "duplicative and potentially conflicting review and the delay and expense incidental thereto," *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 78 (D.C. Cir. 1984) (citation omitted), that would result from having both the Commission (with direct appeal to a court of appeals) and the district court decide Jarkesy's identical claims simultaneously.  And because the district court correctly determined that it lacked subject-matter jurisdiction to hear Jarkesy's

constitutional challenges, the merits of those claims are not properly on appeal before this Court.

The district court's decision should therefore be affirmed.

## ARGUMENT

I.   **The federal securities laws provide an exclusive avenue for review that Jarkesy may not bypass by filing suit in district court.**

The district court correctly dismissed Jarkesy's action for lack of jurisdiction.  It is "fairly discernible" from the text, purpose, and structure of the Exchange Act that Congress has created an exclusive review scheme in which Jarkesy must first raise his challenge, and Jarkesy's district court action does not satisfy the limited exception to exclusive review.

A.   **Under Supreme Court jurisprudence, the question is whether it is "fairly discernible" that Congress intended to channel judicial review through the Commission's administrative process.**

The Supreme Court has "often drawn" a critical distinction "between a total preclusion of review and postponement of review," explaining that a "strong presumption against preclusion of review is not implicated by provision[s] postponing review."  *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 19 (2000).  The issue Jarkesy raises—whether a plaintiff is required to challenge an agency's administrative process under a special statutory review procedure (such as that which Congress provided in the federal securities laws), or may alternatively bring suit in district court under the general federal-question-

- 14 -

jurisdiction statute (*e.g.*, 28 U.S.C. § 1331)—is a question of channeling, not of total preclusion. *See, e.g.*, *Ill. Council*, 529 U.S. at 13; *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975).

Channeling judicial review through an agency's administrative process "is not only of unquestionable constitutionality," but "is also manifestly reasonable," since it can assure an agency the first crack at resolving a plaintiff's objections, while still allowing for judicial review at the end of the administrative process. *Salfi*, 422 U.S. at 762. Indeed, "compelling policy reasons" support a congressional determination to locate exclusive judicial review in the courts of appeals—including the appellate courts' "develop[ment of] expertise concerning the agencies assigned them for review," the "promot[ion of] judicial economy and fairness to the litigants by taking advantage of that expertise," and the "eliminat[ion of] duplicative and potentially conflicting review, and the delay and expense incidental thereto." *TRAC*, 750 F.2d at 78 (citation omitted). Thus, this Court has "cautioned against adopting a narrow interpretation" of such review provisions, *Daniels v. Union Pac. R.R. Co.*, 530 F.3d 936, 943 n.12 (D.C. Cir. 2008), reasoning that to do so would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative

remedies before the agency." *John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007).

Consistent with this recognition, rather than requiring a heightened or express showing of congressional intent to divest a district court of jurisdiction over the subject matter covered by a statutory review scheme, the operative inquiry is whether Congress's intent to foreclose alternative methods of judicial review is "fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)); *see also Elgin*, 132 S. Ct. at 2132-33 ("[T]he appropriate inquiry is whether it is 'fairly discernible' from [the statute] that Congress intended covered employees … to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes." (citation omitted)); *Free Enter.*, 561 U.S. at 489 (Statutory review provisions are exclusive if "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" (citation omitted)).

In *Thunder Basin*, for example, the Court concluded that Congress had implicitly channeled petitioner's pre-enforcement statutory and constitutional challenges to an anticipated enforcement proceeding through procedures provided in the Federal Mine Safety and Health Amendments Act of 1977 (the "Mine Act").

510 U.S. at 202-16. Those procedures routed challenges to agency enforcement proceedings through an administrative review process with judicial review in the court of appeals. *Id.* at 206. Notwithstanding that the Mine Act was "facially silent" about whether the scheme was the exclusive route for pressing "pre-enforcement claims" (*i.e.,* suits brought in advance of any enforcement action by the Department of Labor), the Court held that the statutory scheme "prevent[ed] a district court from exercising subject-matter jurisdiction over a pre-enforcement challenge to the Act" that included a constitutional due-process challenge to the adequacy of the Mine Act's very review procedures. *Id.* at 202, 208. The Court reasoned that the Mine Act provided a "detailed structure" for review of enforcement actions—which tracks closely the review scheme in the federal securities laws—and that, even if the petitioner's constitutional claim could not be addressed by the agency in the first instance, it could be "meaningfully addressed in the Court of Appeals." *Id.* at 207, 215; *see id.* at 208 (Mine Act's structure "demonstrates that Congress intended to preclude challenges such as the present one").

In *Elgin*, the Supreme Court similarly held that the district court lacked jurisdiction over petitioners' constitutional challenges to various agencies' employment decisions based on petitioners' failure to register for the selective service. 132 S. Ct. at 2133-40. The Court held that because the Civil Service

Reform Act of 1978 ("CSRA") channeled judicial review through the agency's administrative process, "it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 2134. This was so, the Court recognized, despite petitioners' claim that the statute under which they suffered their adverse employment actions, the Military Selective Service Act, was itself unconstitutional: "Nothing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional." *Id.* In other words, the Court held, the statutory review scheme "applies to an employee who challenges his removal on the ground that the statute requiring it is unconstitutional no less than it applies to an employee who challenges his removal on any other ground." *Id.* at 2134 (citation omitted).

This Court has likewise recognized—both pre- and post-*Thunder Basin*—that litigants cannot bypass a statutory review scheme that channels judicial review through an agency's administrative process by filing challenges in the district courts. *See, e.g.*, *Coal River Energy, LLC, v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014); *Daniels*, 530 F.3d at 943-44; *John Doe, Inc.*, 484 F.3d at 569; *Fornaro v. James*, 416 F.3d 63, 68 (D.C. Cir. 2005) (Roberts, J.); *Sturm, Ruger*, 300 F.3d at 872; *TRAC*, 750 F.2d at 78-79.

### B.    It is "fairly discernible" that Congress intended to channel judicial review through the Commission's administrative process.

The district court correctly recognized that the Exchange Act's comprehensive scheme for administrative and judicial review is "virtually identical" to that in *Thunder Basin*, and thus precludes district-court jurisdiction over Jarkesy's challenge to the Commission's administrative proceeding.  (JA 285); *see also Sturm, Ruger*, 300 F.3d at 872 (holding that judicial review procedures "nearly identical to those in the Mine Act" precluded district-court jurisdiction) (internal citation omitted).

As in the Mine Act, the Exchange Act provides for a comprehensive agency administrative process with direct review of final agency orders in a court of appeals.  The Exchange Act grants the Commission the authority to file an administrative proceeding for potential violations of the Act.  S*ee, e.g.*, 15 U.S.C. §§ 78u-2, 78u-3.  After the completion of the administrative process, the Act provides for review in "the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit," which shall exercise "exclusive" jurisdiction "to affirm or modify and enforce or to set aside the order in whole or in part" after the Commission has filed

- 19 -

the record on review.  15 U.S.C. § 78y(a).[2]  The Act also mandates that the court

"may … consider[]" only "objection[s] to an order or rule of the Commission" that

were "urged before the Commission," unless "there was reasonable ground for

failure to do so."  *Id.* § 78y(c)(1).  Once a petition for review is filed, the Act

specifies, among other things:  what constitutes the agency record (§ 78y(a)(2));

the standard of review of the Commission's factual findings (§ 78y(a)(4)); the

process for seeking a stay of the Commission order (§ 78y(c)(2)); and the

processes for seeking to "adduce additional evidence" or for the appellate court to

"remand … for further proceedings."  *Id.* § 78y(a)(5).  As in *Thunder Basin*, such a

"detailed structure for reviewing" Commission orders "precludes district court

jurisdiction over the … challenge made here."  510 U.S. at 207; *see also Elgin*, 132

S. Ct. at 2133-34 (holding that, "[g]iven the painstaking detail" of the statutory

review scheme, "it is fairly discernible that Congress intended to deny [aggrieved

persons] an additional avenue of review in district court").

    That Congress intended to foreclose alternative methods of judicial review is

further evidenced by the fact that the Exchange Act permits the subject of a

Commission administrative proceeding to seek recourse in federal district court in

only one narrow circumstance.  Exchange Act Section 21C authorizes the

---

[2]  This provision of the Exchange Act mirrors provisions in the Securities Act, the Advisers Act, and the Company Act.  *See* 15 U.S.C. §§ 77i(a), 80b-13(a), 80a-42(a).

Commission to issue a "temporary cease-and-desist order," a form of emergency relief that may be entered in limited circumstances during the pendency of an administrative proceeding to stop significant harm to the public or investors.  15 U.S.C. § 78u-3(c)-(d).  The Act provides that the respondent may apply to a federal district court within ten days "for an order setting aside, limiting, or suspending the effectiveness or enforcement of the [temporary] order… ."  *Id.* § 78u-3(d)(2).  The statute further provides that this is the "[e]xclusive review" mechanism in these circumstances and the otherwise applicable review process in Section 25 "shall not apply to a temporary order entered pursuant to this section."  *Id.* § 78u-3(d)(4).  Congress's express grant of district-court jurisdiction in this limited circumstance "demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of [the enforcement] claim."  *Elgin*, 132 S. Ct. at 2134.

Moreover, the legislative history of this provision—which Congress added to the Exchange Act in 1990—provides "persuasive evidence that Congress intended to direct ordinary challenges under the … Act to a single review process." *Thunder Basin*, 510 U.S. at 211.  Both the Senate and House Reports differentiate between the district-court-review provision for temporary cease-and-desist orders and the review procedure that applies to the Commission's issuance of a "permanent cease-and-desist order" that "may be appealed to a U.S. Court of Appeals *in the same way as any other SEC order entered under the securities*

- 21 -

*laws*." S. Rep. No. 101-337 at 14-15 (1990) (emphasis added); *see also* H.R. Rep. No. 101-616 at 26 (1990). This provision thus confirms that Congress intended to channel all other challenges to Commission administrative proceedings and orders through the agency process itself, with exclusive review available only in the courts of appeals.

Accordingly, numerous courts have repeatedly found the review scheme for Commission decisions to preclude district-court jurisdiction to challenge Commission administrative proceedings. *See, e.g.*, *Altman v. SEC* ("*Altman III*"), 687 F.3d 44, 45-46 (2d Cir. 2012) (per curiam), *aff'g Altman v. SEC* ("*Altman I*"), 768 F. Supp. 2d 554, 558 (S.D.N.Y. 2011) (holding that Section 25(a) establishes exclusive review scheme that precluded district-court jurisdiction over constitutional challenges to administrative proceeding); *Chau v. SEC*, No. 14-cv-1903, 2014 WL 6984236, at *2-6, 14 (S.D.N.Y. Dec. 11, 2014) (the exclusive "channels of statutory review" in the federal securities laws "are adequate for adjudication of plaintiffs' ... constitutional claims," such that the court "lacks subject matter jurisdiction over" them); *see also Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (characterizing Section 25(a) as a "direct-review statute"); *Mister Disc. Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 876 (7th Cir. 1985) ("[F]inal orders of the Commission are reviewable only in the … [c]ourts of [a]ppeals."); *Allan v. SEC*, 577 F.2d 388, 391-92 (7th Cir. 1978) (affirming district court's conclusion

- 22 -

that Section 25(a) precluded district-court jurisdiction over a suit seeking to "interfere in a Commission administrative proceeding" (citation and quotation marks omitted)); *CleanTech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11-cv-9358, 2012 WL 345902, at *1-2 (S.D.N.Y. Jan. 31, 2012) ("The Exchange Act sets forth a specific and comprehensive scheme for reviewing disciplinary actions taken by self-regulatory organizations ('SRO') like NASDAQ, including review by the SEC ... and the United States Courts of Appeals," which is "the 'exclusive route' for obtaining review of SRO disciplinary actions." (citations omitted)).

For example, in *Altman III*, the Second Circuit held that Section 25(a)—which establishes the very review scheme at issue in this case—was the exclusive route for a plaintiff's constitutional attacks on a Commission administrative proceeding. 687 F.3d at 45-46. Altman sued in district court to enjoin a Commission order permanently barring him from practicing law before the Commission. He claimed that the administrative proceeding against him violated his due process and equal protection rights, and that the Commission acted beyond its constitutional authority in banning him from practice before the Commission. *Altman I*, 768 F. Supp. 2d at 558-61. The district court dismissed the case for lack of subject-matter jurisdiction, *id.* at 562, and the Second Circuit affirmed, holding that Section 25(a) "generally preclude[s] *de novo* review in the district courts,

requiring litigants to bring challenges 'in the Court of Appeals or not at all'" and "suppl[ies] the jurisdictional route that Altman must follow to challenge the SEC action in this case."  *Altman III*, 687 F.3d at 45-46 (citations omitted).

Applying the Second Circuit's decision in *Altman III*, the District Court for the Southern District of New York recently dismissed for lack of subject-matter jurisdiction constitutional challenges to a Commission administrative proceeding that, like Jarkesy's, were brought in district court.  *Chau*, 2014 WL 6984236, at *14.  There, like here, the district court held that "permitting plaintiffs to seek pre-enforcement relief from the SEC ... would be 'inimical to the structure and purposes' of the statutory review scheme governing SEC adjudications."  *Id.* at *6 (quoting *Thunder Basin*, 510 U.S. at 216).  Upon surveying the relevant decisions, *id.* at *5, the court determined that "one clear conclusion" they "yield[]" is that a plaintiff cannot "procure a one-way ticket out of an agency proceeding and into district court simply by raising a constitutional allegation," *id.* at *6 ("*Thunder Basin*, *Free Enterprise Fund*, and good sense say otherwise").  In sum, "[t]his Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when," as is true here, "statutory channels of review are entirely adequate."  *Id.*

These precedents support dismissal of Jarkesy's attempt to halt the Commission's administrative proceeding against him.  As this Court recognized in

an almost identical scenario in *Sturm, Ruger*, such an attempted "end run around"

Congress's exclusive review procedure is properly dismissed for lack of

jurisdiction:

> Rather than allowing the statutory review process to run its course—a course that will eventually lead back to a court of appeals—Sturm Ruger sought to make an end run around that process by going directly to district court. Indeed, the company is attempting to end that process altogether: its complaint seeks an injunction ... that would terminate the proceeding currently pending before the Commission. Our obligation to respect the review process established by Congress bars us from permitting Sturm Ruger to make this end run, and requires dismissal of its district court complaint.

300 F.3d at 876. The same result is warranted here.

Indeed, the overlapping and identical allegations that Jarkesy has raised

before the agency and in this case illustrate the problems of allowing litigants to

bypass an exclusive review scheme. This Court has emphasized that exclusive

review schemes "promote[] judicial economy and fairness to the litigants" and

"eliminate[] duplicative and potentially conflicting review, and the delay and

expense incidental thereto." *TRAC*, 750 F.2d at 78 (citation omitted). But if

Jarkesy is permitted to proceed with his constitutional claims simultaneously in the

district court and before the Commission, then the courts of appeals could be faced

with two sets of rulings on the very same claims, potentially at different times and

with conflicting results. This is precisely the scenario that Congress's exclusive

review scheme was intended to avoid.

**C.    There is no exception to *Thunder Basin* for "facial" constitutional challenges.**

Jarkesy's attempt to salvage his district court challenge by recasting it as a "facial" constitutional attack on the Commission's authority to bring administrative enforcement actions seeking civil penalties against unassociated persons (Br. 46-47) is based on a misreading of applicable law.

Contrary to Jarkesy's claim (Br. 47) that "[j]urisdiction to resolve facial challenges does not have to await exhaustion of remedies," the Supreme Court has made clear that whether a review scheme is exclusive "does not turn on the constitutional nature" of the claim or on whether such a claim is styled as a facial or as an as-applied challenge. *Elgin,* 132 S. Ct. at 2135-36 (dismissing argument that exclusive review statute did not apply where petitioners brought a facial constitutional challenge to the statute authorizing the adverse employment actions of which they complained).  In *Elgin*, the Court emphasized that, unless the statutory language provides otherwise, an exclusive statutory review scheme "applies to a[] [plaintiff] who challenges [agency action] on the ground that the statute requiring it is unconstitutional no less than it applies to [one] who challenges [agency action] on any other ground."  *Id.* at 2134 (citation omitted). The Court criticized caselaw recognizing a supposed distinction between "facial and as-applied constitutional challenges," on the one hand, and "other constitutional challenges," on the other, observing that such a "line is hazy at best

... and incoherent at worst." *Id.* at 2135. Such a "jurisdictional rule based on the nature of a ... constitutional claim," the Court concluded, "would deprive [litigants], the [agency], and the district court of clear guidance about the proper forum for … claims at the outset of the case." *Id.*

As noted *supra* p. 15, this Court "ha[s] cautioned against adopting a narrow interpretation" of such statutes in light of the "compelling policy reasons" in favor of channeling judicial review to the courts of appeals at the conclusion of an agency's administrative process. *E.g.*, *Daniels*, 530 F.3d at 943, n.12. Apart from the limited exception for temporary cease-and-desist orders (*see supra* pp. 20-22), there is no indication in the text of Section 25(a) that Congress intended to limit the Exchange Act's review scheme only to certain types of claims. Indeed, the only statutory limitation Congress provided in Section 25 is the directive that a petitioner must have raised the issue before the Commission, *see, e.g.*, 15 U.S.C. § 78y(c)(1), which only reinforces the conclusion that Congress intended this process to be exclusive. "Allowing an alternative route to relief in the district court because plaintiffs frame their suit as a systemwide challenge," therefore, "would substitute an entirely different remedial regime for the one Congress intended to be exclusive." *Fornaro*, 416 F.3d at 68.

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), which Jarkesy cites in support of his so-called "facial challenge" exception (Br. 47), is not

to the contrary.  In *McNary*, undocumented aliens who were denied amnesty status filed a class action in district court claiming that the Immigration and Naturalization Service's application process violated due process.  498 U.S. at 487-88.  The Court upheld the district court's determination that it had jurisdiction over plaintiffs' action even though the Immigration and Nationality Act ("INA") barred judicial review of all INS determinations other than deportation decisions.  *Id.* at 491-94.  The Court reasoned that "[w]ere [it] to hold otherwise and instead require respondents to avail themselves of the limited judicial review procedures set forth in ... the INA, meaningful judicial review of their statutory and constitutional claims would be foreclosed."  *Id.* at 484.

*McNary* thus "did not create an exception to the INA's jurisdictional bar simply because the plaintiffs mounted a constitutional challenge—that is, the nature of the claim itself does not determine whether the jurisdictional bar applies." *Daniels*, 530 F.3d at 943.  Rather, as this Court has observed, "the availability of effective judicial review is the touchstone of the *McNary* exception."  *Id.*  Because meaningful judicial review was available under the statutory review scheme in *Daniels* "in the circuit court"—as it is here under the Exchange Act—this Court held that it had "exclusive jurisdiction over the plaintiffs' constitutional challenges," and affirmed the district court's dismissal for lack of jurisdiction.  *Id.* at 944; *see also John Doe, Inc.*, 484 F.3d at 569 (finding *McNary* "wholly

inapplicable" where "claims are fully reviewable in this court" through exclusive review scheme).  Jarkesy's reliance on *McNary* to support his claim of jurisdiction in this case is misplaced.

Nor does *Johnson v. Robison*, 415 U.S. 361 (1974) (cited at Br. 47), support Jarkesy's position.  In *Johnson*, the Court held that a "no review" statute—which barred all judicial review of veterans'-benefits determinations—did not bar a district court action challenging the constitutionality of the veteran's benefits legislation itself.  415 U.S. at 366-67.  Critically, not only was the plaintiff there unable to challenge the constitutionality of the statute in court if the district court lacked jurisdiction over his claim, but the agency had "expressly disclaimed authority to decide constitutional questions."  *Id.* at 368.  The Supreme Court reasoned that if the statute were construed to preclude the plaintiff's claims, then it would raise "serious questions" about the statute's own constitutionality.  *Id*. at 366-67.  Here, in contrast, Jarkesy can raise (indeed, has raised) his challenges in the administrative proceeding itself, and can petition the court of appeals if he is aggrieved by the Commission's final determination.

*General Electric Co. v. EPA* ("*GE I*"), 360 F.3d 188 (D.C. Cir. 2004) (per curiam), on which Jarkesy also relies (Br. 47), is similarly inapposite.  *GE I* concerned a broad challenge to the agency's administration of certain statutory provisions that was unreviewable under the plain text of the review provision at

- 29 -

issue there.  Thus, as this Court subsequently recognized, its earlier ruling that the

company's district court challenge was not precluded by the applicable statutory

review scheme was based on the fact that the plaintiff "'d[id] not challenge any

particular action or order by [the agency.]'"  *Gen. Elec. Co. v. EPA* ("*GE II*"), 610

F.3d 110, 116 (D.C. Cir. 2010) (quoting *GE I*, 360 F.3d at 191).[3]

Indeed, much like in *Free Enterprise* (discussed *infra* pp. 32-33, 41), GE

faced "a classic and unconstitutional Hobson's choice," *GE II*, 610 F.3d at 116, if

it could not maintain its district court challenge:  it could either comply with the

agency's unilateral orders and seek reimbursement under the statute, or risk severe

punishment if it refused to comply with the agency's orders and was then subject

to an agency's enforcement action to compel compliance.  *See Free Enter.*, 561

U.S. at 490-91 (courts "normally do not require plaintiffs to bet the farm ... by

taking ... violative action [to] test[] the validity of the law") (quotations omitted).

That is hardly the situation here, where Jarkesy challenges an ongoing

administrative proceeding and need do nothing more than litigate the

---

[3]  *See also Time Warner Entertainment Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996) (per curiam) (holding that an exclusive statutory scheme "does not deprive [a district] court of its general federal question jurisdiction to consider a facial challenge to a statute's constitutionality so long as that challenge is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action").

Commission's administrative action to conclusion before he may seek judicial review.[4]

**D.    Jarkesy's action does not satisfy the narrow exception that would allow him to avoid this exclusive statutory review scheme.**

The Supreme Court has recognized a limited exception to the exclusive review principles outlined above, holding that an exclusive scheme of review deprives a district court of general federal-question jurisdiction unless each of three elements is satisfied:  (1) "a finding of preclusion could foreclose all meaningful judicial review"; (2) "the suit is wholly collateral to a statute's review provisions"; and (3) "the claims are outside the agency's expertise."  *Elgin*, 132 S. Ct. at 2136 (quoting *Free Enter.*, 561 U.S. at 489 (internal quotation marks and citation omitted)).  Jarkesy cannot establish any of these factors, let alone all three.

**1.    Jarkesy can obtain meaningful judicial review of his claims.**

The review scheme in the federal securities laws does not "foreclose all meaningful judicial review" of Jarkesy's claims; rather, it ensures it.  In his complaint, Jarkesy seeks "emergency injunctive and declaratory relief to prevent the SEC from proceeding with an administrative proceeding … that has violated, and will continue to violate, [his] fundamental constitutional rights."  (JA 8)

---

[4]  To the extent the Administrative Procedure Act is applicable in light of the SEC's exclusive review scheme (*see* Br. 51), Section 702 is a waiver of sovereign immunity, not a grant of jurisdiction.  *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Specifically, Jarkesy attacks (Br. 5) the ongoing administrative "proceedings [as] being conducted in violation of Jarkesy's Fifth Amendment due process rights, Fifth Amendment equal protection rights, Seventh Amendment right to trial by jury and constitutional separation of powers." The object of each of Jarkesy's claims is thus the same: to set aside the proceeding currently before the Commission on appeal. But there is no dispute that if Jarkesy is "aggrieved" by the "final order of the Commission" that will be entered at the conclusion of his administrative appeal, he may immediately seek review of that order in a court of appeals pursuant to the jurisdiction-channeling provision in the review scheme. *E.g.*, 15 U.S.C. § 78y(a)(1). The appellate court, in turn, can decide whether to grant him the relief he seeks by setting aside any final order issued against him, *e.g.*, *id.* § 78y(a)(2), after considering his constitutional arguments and any other grounds for appeal that he raises.

This certain and direct path to judicial review in an Article III court is one of the critical differences between the circumstances in *Free Enterprise* and this case. In *Free Enterprise*, petitioner accounting firm sought a declaration that the Public Company Accounting Oversight Board was unconstitutional on the grounds that the "Board's existence" violated the Appointments Clause and contravened the separation-of-powers requirement. 561 U.S. at 487, 490. Though petitioner had been subject to a Board investigation, there was no action taken against it and no

- 32 -

order from which judicial review could be sought. *Id.* at 490. Thus, as the Court found, the only path to judicial review was for petitioner to initiate its own agency proceeding by either challenging a "random" Board rule or refusing to comply with a Board request. *Id.* This was not a "meaningful avenue of relief," the Court held, because courts "normally do not require plaintiffs to bet the farm … by taking the violative action before testing the validity of the law." *Id.* at 490-91 (citation and quotation marks omitted); *accord McNary*, 498 U.S. at 496 ("[I]f not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review" of their claims.); *Johnson*, 415 U.S. at 373-74 (construing statute to prohibit suit in district court would "restrict access to judicial review" and call into doubt the constitutionality of the statute itself).[5]

Here, by contrast, Jarkesy need not violate the law or mount a "random" rule challenge to obtain meaningful judicial review; he need only raise his claims before the Commission and then petition a court of appeals to review any adverse final decision by the Commission. *See Thunder Basin*, 510 U.S. at 215

---

[5] *Arjent LLC v. SEC*, 7 F. Supp. 3d 378 (S.D.N.Y. 2014), cited by Jarkesy (Br. 50, 53), is likewise distinguishable on this basis. There, the court declined to dismiss a suit to enjoin an allegedly unconstitutional Commission investigation on jurisdictional grounds, finding "all judicial review" would be "foreclose[d]" because the "SEC has no administrative procedure for raising such a claim." *Id.* at 384.

- 33 -

("petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals" even if not reviewable by the agency). This Court and other courts of appeals routinely consider all manner of constitutional challenges to Commission administrative proceedings in this posture, in accordance with the normal statutory channel of review in the federal securities laws. *See, e.g.*, *Altman v. SEC* ("*Altman II*"), 666 F.3d 1322, 1324-25 (D.C. Cir. 2011) (denying petition for review and rejecting plaintiff's constitutional claims in case where Second Circuit held the exclusive remedial scheme in the federal securities laws precluded district-court jurisdiction); *Altman III*, 687 F.3d at 45-46; *see also, e.g.*, *Seghers v. SEC*, 548 F.3d 129, 136 (D.C. Cir. 2008) (denying petition for review and rejecting plaintiff's due process claim); *Sheldon v. SEC*, 45 F.3d 1515, 1518 (11th Cir. 1995) (denying petition for review and ruling on claims that administrative proceedings "violate the 'separation of powers' and deny broker-dealers due process of law").

Jarkesy's sole argument on this point (Br. 53) is that meaningful review of his so-called "evidence-based" equal protection and due process claims is "impossible" because "[t]here is no procedural mechanism for the development of evidence in support of the claims under the SEC's Rules of Practice or the Administrative Procedure[] Act." But even if Jarkesy were correct that the Commission's processes were inadequate to allow him to develop an evidentiary

- 34 -

record in support of his allegations—which he is not, *see infra*—a court of appeals would still have "adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record." *Ill. Council*, 529 U.S. at 23-24 (citations omitted). Indeed, *Elgin* rejected petitioners' argument there that appellate review was not "meaningful" because of purported deficiencies in the factual record, noting that the court of appeals could take "judicial notice of facts relevant to the constitutional question" and that "the CSRA empowers the MSPB to take evidence and find facts for [the court of appeals'] review." 132 S. Ct. at 2138. Thus, as this Court has recognized, "concern over the lack of a comprehensive administrative record is not sufficient cause to narrow the scope of" an exclusive review provision. *John Doe, Inc.*, 484 F.3d at 569, 570 (noting that "where an insufficient administrative record is crippling, a court of appeals always has the option of … remanding to the agency for further factual development").

In any event, Jarkesy's characterization of the Commission's evidentiary procedures is incorrect both as a general matter and specifically in this case. The exclusive review scheme here affords parties in administrative proceedings multiple avenues to establish a record with facts necessary for an appellate court to resolve their claims. First, the SEC's Rules of Practice permit the Commission or an ALJ to take notice of "any material fact which might be judicially noticed by a

- 35 -

district court of the United States, any matter in the public official records of the

Commission, or any matter which is peculiarly within the knowledge of the

Commission as an expert body." 17 C.F.R. § 201.323. The Rules also permit any

party in an administrative proceeding to request the issuance of a subpoena for

"documentary or other tangible evidence" or for testimonial evidence at the

hearing. *See id.* § 201.232(a). If a subpoena request is denied, or if a party

believes that the evidentiary record of an administrative proceeding is otherwise

deficient, the party may file a motion with the full Commission "for leave to

adduce additional evidence" at any time before the issuance of the Commission's

final decision. *Id.* § 201.452.

The Commission too has broad authority to shape and supplement the

administrative record: it "may accept or hear additional evidence ... or may

remand or refer the proceeding to a hearing officer for the taking of additional

evidence, as appropriate." *Id.*; *see optionsXpress, Inc.*, Securities Act Release No.

9466, 2013 WL 5635987, at *8-10 (Oct. 16, 2013) (granting in part and denying in

part respondents' motions under Rule 452 to adduce additional evidence, and

taking judicial notice of certain evidence); *Calais Res. Inc.*, Exchange Act Release

No. 67312, 2012 WL 2499349, at *4 n.19 (June 29, 2012) (granting motions by

both respondent and the Enforcement Division to adduce additional evidence).

Finally, the statutory review provisions permit a party challenging a Commission

decision before an appellate court to seek "leave to adduce additional evidence" and, if the court agrees the record should be supplemented, it may "remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate." 15 U.S.C. § 78y(a)(5); *see, e.g., Checkosky v. SEC*, 23 F.3d 452, 457 n.5 (D.C. Cir. 1994) (discussing "evidence produced to the Commission" after the Commission's decision and noting, "[o]f course, the Commission is free to consider this and other newly discovered evidence in reaching its decision on remand").

Indeed, Jarkesy sought to subpoena documents and testimony in this very case. And contrary to his assertion (Br. 53), the ALJ did not "summarily" reject his subpoena requests; rather, the ALJ issued a two-page order denying the requests as both untimely and unreasonable and explaining that the requests "specifie[d] evidence largely consisting of privileged" materials. Feb. 14, 2014 Order. Thus, like the plaintiffs in *Chau*, Jarkesy's "failure to obtain what [he] sought was not a product of the SEC Rules of Practice" but "a consequence of a ... ruling that might well have been reached by a district court." *Chau*, 2014 WL 6984236, at *11.[6] Under the SEC's Rules of Practice, Jarkesy can—and indeed

---

[6] *Gupta v. SEC,* 796 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2011), on which Jarkesy relies in making this argument (Br. 50, 53), was effectively overruled by *Altman III*, and thus does not remain good law. In any event, *Chau* refused to follow *Gupta*, finding that "meaningful judicial review" was available since the Commission's discovery procedures were being reasonably applied there and any

did—appeal this discovery decision to the Commission, petition the Commission that additional evidence is necessary to develop his claims, and/or argue that the inability to obtain this evidence is an independent ground for setting aside the ALJ's initial decision.  *See* 17 C.F.R. § 201.452; Respondents' Jan. 13, 2015 Opening Brief at 1; Jan. 13, 2015 Motion to Adduce Additional Evidence.  And, as noted above, if the Commission ultimately issues an adverse decision in his case, Jarkesy may raise all of these same arguments before the appellate court and may seek leave from that court to adduce additional evidence.[7]

## 2.      Jarkesy's suit is not "wholly collateral" to the review scheme.

Jarkesy mistakenly argues (Br. 21) that his "claims" are "wholly collateral" because "they are independent of and irrelevant to the securities fraud allegations against Jarkesy."  But the question is whether "the *suit* is 'wholly collateral to a statute's review provisions.'"  *Elgin*, 132 S. Ct. at 2136 (quoting *Free Enter.*, 561 U.S. at 489 (emphasis added)).  Jarkesy's suit plainly is not.

---

purported error in the Commission's application and/or interpretation of those procedures could be addressed by the court of appeals on review.  2014 WL 6984236, at *11-13.

[7]  For the same reason, Jarkesy's complaint (Br. 53) about his inability to file counterclaims in the administrative proceeding is irrelevant:  as *Chau* recognized, and is equally applicable here, the "SEC's procedures" have hardly "condemned plaintiffs' [constitutional] claim[s] to failure," and such claims "will be ripe for appellate examination in due course in the event that [plaintiffs] lose in the administrative arena."  2014 WL 6984236, at *11-13.

In assessing whether a suit is "wholly collateral" to a review scheme, the Supreme Court has repeatedly looked both to the claims at issue and the relief sought to determine whether the litigant attempting to bypass an exclusive review scheme seeks the very remedies available in that scheme. In *Elgin*, for example, the Court held that plaintiffs' constitutional claims were not "wholly collateral" to the CSRA scheme, where, "[a]s evidenced by their district court complaint, petitioners' constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action"— "relief that the CSRA routinely affords." *Elgin*, 132 S. Ct. at 2139-40. *Heckler v. Ringer*, 466 U.S. 602 (1984), similarly held plaintiffs' suit not "wholly collateral" to the Medicare reimbursement statutory review scheme because, "at bottom," plaintiffs' statutory and constitutional claims were an attempt to reverse the agency's denial of payment, and "the relief that respondents seek to redress" their claims was the same remedy available under the scheme. *Id.* at 614. So too, in *Sturm, Ruger*, this Court held that the company could not bypass an exclusive review scheme where the company's district court complaint "raised the identical claims" that it had raised before the agency and "s[ought] an injunction" to "terminate the proceeding currently pending before the Commission." 300 F.3d at 876.

Likewise here, the only relief Jarkesy has ever sought in this litigation is an injunction and declaratory judgment that would "terminate the proceeding currently pending before the Commission" (*Sturm, Ruger*, 300 F.3d at 876)—relief available to him under the exclusive review scheme.  *See* (JA 8) ("Plaintiffs seek emergency injunctive and declaratory relief to prevent the SEC from proceeding with an administrative proceeding ... that has violated, and will continue to violate, Plaintiffs' fundamental constitutional rights."); Br. 5 ("This Action was brought ... to enjoin further proceedings and for a declaratory judgment that the proceedings were being conducted in violation of Jarkesy's" constitutional rights.); *see also, e.g.*, *id.* 19 (alleged Seventh Amendment violation "render[s] the pending administrative action against Jarkesy unlawful"); *id.* 28 ("The transfer of unconstrained and unreviewable legislative power violates the separation of powers, vitiating the underlying proceedings against Jarkesy"); *id.* 45 ("the ongoing administrative enforcement proceedings against Jarkesy are void" due to prejudgment).  Tellingly, the arguments Jarkesy made before the district court and now in this Court to have the proceeding set aside are "identical" to those he advanced before the ALJ and in his appeal to the Commission.  *Compare* Respondents' May 28, 2014 Post-Hearing Mem. of Law at 1-2, http://www.sec.gov/litigation/apdocuments/3-15255-event-128.pdf *and* Respondents' Jan. 13, 2015 Opening Brief at 1, *with* Br. 5, *and* JA 44-45.

- 40 -

To the extent Jarkesy argues that his suit is "wholly collateral" to the review scheme because certain of his constitutional challenges are "facial," this misunderstands the analysis. As noted *supra* pp. 26-31, whether a review scheme is exclusive is not "based on the nature of a[] . . . constitutional claim," but on the text of the statutory review provision and congressional intent. *Elgin,* 132 S. Ct. at 2135; *see also Daniels,* 530 F.3d at 944 ("[T]he nature of the claim itself does not determine whether the jurisdictional bar applies."). Styling a claim as "facial" does not make it reviewable by a district court outside of this jurisdictional channel. Instead, a challenge is "wholly collateral" only if it "is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action." *Time Warner*, 93 F.3d at 964-65.

The circumstances in *Free Enterprise* once again underscore the difference between that case and this one. In *Free Enterprise*, the Court found petitioners' challenge to the constitutionality of the Board's very "existence" and general regulatory authority to be "wholly collateral" not because of the nature of the claim, but because the challenge was not to "any Commission orders or rules from which review might be sought" under the federal securities laws' exclusive review scheme. 561 U.S. at 489-90. The continued existence of the Board thus had consequences for the *Free Enterprise* petitioner even when no agency action was

brought or threatened in the form of an order or rule that could be challenged through the exclusive review scheme.  The situation here is altogether different: Each of Jarkesy's claims here flows entirely from the fact that he currently is the subject of the very administrative proceeding that he seeks through this action to set aside as unconstitutional; and that proceeding will result in an order (including on the identical claims he raises here) that is exclusively appealable through the review scheme.

### 3.     Jarkesy's claims are not outside the Commission's expertise.

Jarkesy's challenge falls squarely within the Commission's expertise.  As the Court recognized in *Elgin*, an agency's expertise may bear on "the many threshold questions that may accompany a constitutional claim" and may "obviate the need to address the constitutional challenge."  132 S. Ct. 2140.

Here, for example, many of Jarkesy's claims—*e.g.*, that he was deprived of due process because of the speed of the Commission's proceedings; that he could not develop an adequate factual record; and that the Enforcement Division violated its *Brady* obligations—are governed by the SEC's Rules of Practice.  *See* 17 C.F.R. § 201.230(b)(2) (disclosure of exculpatory evidence by the Enforcement Division); *id.* § 201.232 ("Subpoenas"); *id.* § 201.360(a)(2)-(3) (timing of ALJ's initial decision and extensions).  The Commission is in the best position to interpret its own Rules of Practice in the first instance.  *See Ill. Council*, 529 U.S. at 24

("Proceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges.").  Indeed, when Jarkesy sought interlocutory review of his *Brady* claim, the Commission's order discussed the merits of that claim, including the scope of the Enforcement Division's disclosure obligations under Rule of Practice 230(b)(2).  *JTCM I*, 2013 WL 6384275, at *9.  Jarkesy's other claims—that the Commission engaged in unlawful *ex parte* communication; that his co-respondents' settlement agreement prejudged his case; and that the Commission has no guidelines for choosing whether to proceed administratively or in district court—involve core matters of agency policy that the Commission should be permitted to address in the first instance.  *See Ill. Council*, 529 U.S. at 24; *see also JTCM II*, 2014 WL 294551, at *3-4 (discussing "unbroken line" of Commission decisions discussing prejudgment issue).

Thus, by any measure, the Commission has expertise that can be "brought to bear" on Jarkesy's claims.  *See Thunder Basin*, 510 U.S. at 214-15 (concluding agency had sufficient expertise on statutory claim where "[a]lthough the Commission has no particular expertise in construing statutes other than the Mine Act, ... agency expertise could be brought to bear on the statutory questions presented here" (citation and quotation marks omitted)).  The Commission's interpretation of its rules and policies could also "alleviate constitutional

- 43 -

concerns," or could even resolve the proceeding in Jarkesy's favor, thus avoiding the constitutional issues altogether. *Elgin*, 132 S. Ct. at 2140.

## II.    The merits of Jarkesy's constitutional claims are not properly before this Court at this time.

The only issue properly on appeal before this Court is whether the district court correctly determined that it lacked subject-matter jurisdiction to hear Jarkesy's claims. *See Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012) (per curiam) (noting the Court's "usual (although hardly universal) practice of declining to address arguments unaddressed by the district court"). Although Jarkesy maintains that the merits of his constitutional challenges are properly before the Court—and devotes the majority of his brief to discussing them—the district court found that it did not have jurisdiction over any of those claims and thus did not issue a decision on the merits.

Even if this Court were inclined to address the merits of the constitutional claims Jarkesy made in the district court, Jarkesy did not raise his "facial" constitutional challenges in the district court. A review of the relief sought in the complaint only confirms this fact. (JA 24-26) Tellingly, Section IV of Jarkesy's brief to this Court is devoted to attempting to establish that his facial challenges were raised below and are now properly before the Court, but even that section does not cite to his complaint to identify where these arguments were supposedly made. "It is well settled that issues and legal theories not asserted at the District

Court level ordinarily will not be heard on appeal." *Dist. of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) (holding that "[d]ecisions in this Circuit have consistently followed a practice of dismissing appeals brought on grounds not asserted in the trial court").

Indeed, although Jarkesy characterizes this case (Br. 4) as a "challenge—on constitutional grounds—[to] the expanded administrative enforcement authority given to the [SEC] by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010," the words "Dodd-Frank," or any citation to that statute, do not appear at all in Jarkesy's complaint.[8] Jarkesy's first two arguments before this Court—that "Congress' Delegation of Power to the SEC to Select Administrative Adjudication of Claims that Only Courts Had Adjudicated Previously Is A Violation of the Constitutional Separation of Powers" (Br. 22) and that "[t]he Dodd-Frank Statutory Provisions Authorizing Imposition And Collection of Enhanced Penalties In Administrative Enforcement Proceedings Violate the Seventh Amendment" (Br. 31)—are simply not in the record below. Although Jarkesy did mention the Seventh Amendment in his complaint, he did so only in an as-applied manner under the heading "Charging Plaintiffs in the Forum

---

[8]  Jarkesy identified Dodd-Frank as the statute he is challenging for the first time in his opposition papers to the SEC's Motion for Summary Affirmance before this Court. *See* D. 1515750 (Appellants' Oct. 6, 2014 Response in Opposition to Appellee's Motion for Summary Affirmance and Reply to Appellee's Opposition to Appellants' Motion for Expedited Consideration) at 1.

of an AP Violated Their Rights to Equal Protection Through Denial of

Fundamental Right to Jury Trial." (JA 14-15)  The district court, after presiding

over a two-hour hearing in which Jarkesy had the opportunity to elaborate on the

theories of his case, observed that Jarkesy made no "claim about any statute apart

from how the statute is being applied to [him] in the instant enforcement action."

(JA 288).[9]

Finally, because Jarkesy raises substantive arguments before this Court that

he is also raising in his administrative appeal currently pending before the

Commission, prudential concerns counsel against our taking a position on the

merits of those claims before the Commission has had the opportunity to rule on

them in the first instance.  That this brief does not address the merits of these

claims therefore does not have any bearing on the SEC's position as to their

validity.  Thus, if this Court were to find that the district court erred in dismissing

the action for lack of jurisdiction, remand to that court would be appropriate.

---

[9]  Jarkesy also did not allege in his complaint or elsewhere in the district court proceedings that the SEC is relying on a statute that would not be valid in any circumstance, a standard he would have to meet to lodge a cognizable facial challenge.  *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (explaining a facial challenge can prevail only if "no set of circumstances exists under which the Act would be valid").

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

January 28, 2015                    Respectfully submitted,

                                    RICHARD M. HUMES
                                    Associate General Counsel

                                    SAMUEL M. FORSTEIN
                                    Assistant General Counsel

                                    DOMINICK V. FREDA
                                    Senior Litigation Counsel

                                    /s/ Sarah E. Hancur
                                    SARAH E. HANCUR
                                    Senior Counsel

                                    U.S. Securities and Exchange Commission
                                    100 F Street, NE
                                    Washington, DC 20549-9612
                                    (202) 551-5194 Tel. (Hancur)
                                    (202) 772-9263 Fax
                                    hancurs@sec.gov

                                    *Counsel for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,969 words, excluding the portions of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ Sarah E. Hancur

## CERTIFICATE OF SERVICE

I, Sarah E. Hancur, counsel for appellant and member of the Bar of this Court, certify that on January 28, 2015, I electronically filed the foregoing Brief for Defendant-Appellee U.S. Securities and Exchange Commission with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel of record.

/s/ Sarah E. Hancur