ORAL ARGUMENT SCHEDULED FOR APRIL 13, 2015

**No. 14-5196**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

GEORGE R. JARKESY, JR. AND PATRIOT28, LLC,

*Appellants*,

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:14-CV-00114-BAH (HON. BERYL A. HOWELL)

---

**APPELLANTS' REPLY BRIEF**

---

Mark B. Bierbower
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
Phone: (202) 955-1665
Fax: (202) 778-2201
mbierbower@hunton.com

S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
1717 McKinney Avenue, Suite 700
Dallas, TX 75202
Phone: (214) 593-6415
Fax: (214) 593-6431
smm@mccolloch-law.com

Karen L. Cook
KAREN COOK, PLLC
1717 McKinney Avenue, Suite 700
Dallas, TX 75202
Phone: (214) 593-6429
Fax: (214) 593-6431
karen@karencook.law.com

*Counsel for Appellants George R.
Jarkesy, Jr. and Patriot28, LLC*

Dated: February 11, 2015

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY OF TERMS ....................................................................v

SUMMARY OF ARGUMENT ............................................................1

INTRODUCTION ...............................................................................2

ARGUMENT ......................................................................................4

I.    This Court Should Resolve Jarkesy's Constitutional Claims Under the All Writs Act Pursuant to *TRAC* if the Court Declines to Resolve Those Claims in Exercising Its Appellate Jurisdiction. ..................4

II.    The District Court Had Subject Matter Jurisdiction to Hear Jarkesy's Constitutional Claims. ..................................................10

    A.    The Challenges Arise From Commission Actions Outside the Scope of the Administrative Proceeding and Therefore Outside the Purview of the Statutory Review Scheme....................................12

    B.    To the Extent the *Free Enterprise/Thunder Basin* Factors Apply, the District Court Had Jurisdiction to Hear Jarkesy's Claims.............................................................................................17

        1.    Jarkesy Cannot Obtain Meaningful Judicial Review...............17

        2.    Jarkesy's Claims Are "Wholly Collateral" to the Administrative Proceeding.......................................................21

        3.    The Constitutional Claims Are Outside the SEC's Expertise.................................................................................25

CONCLUSION AND PRAYER FOR RELIEF ....................................27

CERTIFICATE OF COMPLIANCE....................................................30

CERTIFICATE OF SERVICE .............................................................31

i

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Amos Treat & Co. v. SEC,* 306 F.2d 260 (D.C. Cir. 1962)......................................15

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 745 F.2d 677 (D.C. Cir. 1984)................................................23

*Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151 (D.C. Cir. 1979)................9

*Camp v. Pitts,* 411 U.S. 138 (1973) ........................................................................17

*\*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994)................................................................................................16

*Chamber of Commerce v. Reich,* 74 F.3d 1322 (D.C. Cir. 1996) ..........................13

*Chau v. SEC,* No. 14-cv-1903 (LAK), 2014 WL 6984236 (S.D.N.Y. Dec. 11, 2014) ....................................................... 19-20

*\*Cinderella Career & Finishing Schs., Inc. v. FTC,* 425 F.2d 583 (D.C. Cir. 1970) ..........................................................................................................6

*Elgin v. Department of the Treasury*, --- U.S.---, 132 S. Ct. 2126 (2012) ....... 17-18, 22, 25

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................28

*\*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)......................................................................................................................26

*FTC v. Dean Foods Co.*, 384 U.S. 597 (1966) ..........................................................8

*Gibson v. Berryhill,* 411 U.S. 564 (1973)................................................................24

*\*Grace v. Burger*, 665 F.2d 1193 (D.C. Cir. 1981), *aff'd in part, vacated in part*, *United States v. Grace*, 461 U.S. 171 (1983) ...................................7

*Heckler v. Ringer*, 466 U.S. 602 (1984) ..................................................................24

---

\* Authorities upon which we chiefly rely are marked with asterisks.

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hormel v. Helvering*, 312 U.S. 552 (1941)............................................................. 7-8

*Houghton v. Shafer,* 392 U.S. 639 (1968) ................................................................24

*In re Murchison,* 349 U.S. 133 (1955)................................................................. 15-16

*\*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) ............... 22-25, 27

*Mills v. Dist. of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ...................................28

*Offutt v. United States,* 348 U.S. 11 (1954) ............................................................16

*SEC v. Bolla*, 550 F. Supp. 2d 54 (D.D.C. 2008) ....................................................16

*SEC v. Chenery Corp.,* 318 U.S. 80 (1943) .............................................................19

*Singleton v. Wulff,* 428 U.S. 106 (1976) ...................................................................7

*\*Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70
    (D.C. Cir. 1984)................................................................................................4-5, 8-9

*Texaco, Inc. v. FTC*, 336 F.2d 754 (D.C. Cir. 1964), *vacated on other
    grounds*, 381 U.S. 739 (1965) ..........................................................................6

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ....................................................13

*United States v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008)........................................8

## Regulatory Decisions

*In re David F. Bandimere & John O. Young*, Admin. Proc. File No. 3-15124,
    Initial Decision as to David F. Bandimere, Release No. 507 (Oct. 8,
    2013), *available at*: http://www.sec.gov/alj/aljdec/2013/id507ce.pdf ..........15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

### Statutes & Regulations

5 U.S.C. § 703 ..................................................................................13

5 U.S.C. § 706 .............................................................................14, 16

5 U.S.C. §§ 1101, *et seq*. ....................................................................17

5 U.S.C. § 1204(b)(1)–(2) ...................................................................18

5 U.S.C. § 7703(a) ..............................................................................18

8 U.S.C. § 1160(e)(3)(B) .....................................................................23

15 U.S.C. § 77i(a) ..........................................................................11, 15

15 U.S.C. § 77t .............................................................................. 14-15

15 U.S.C. § 78u ............................................................................. 14-15

15 U.S.C. § 78y(a) .........................................................................11, 15

15 U.S.C. § 78y(a)(1) ..........................................................................14

15 U.S.C. § 80a-41 ........................................................................ 14-15

15 U.S.C. § 80a-42 ........................................................................11, 15

15 U.S.C. § 80b-9 .......................................................................... 14-15

15 U.S.C. § 80b-13 ........................................................................11, 15

28 U.S.C. § 1651 ...................................................................................5

5 C.F.R. § 1201.3(a) ............................................................................18

17 C.F.R. §§ 201.200-210 ...................................................................15

17 C.F.R. § 201.410 ..............................................................................3

## GLOSSARY OF TERMS

| | |
|---|---|
| Advisers Act | Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1, *et seq.* |
| ALJ | Administrative Law Judge |
| All Writs Act | 28 U.S.C. § 1651 |
| APA | Administrative Procedure Act |
| Company Act | Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq.* |
| Dodd-Frank | Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010) |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* |
| INS | Immigration and Naturalization Service |
| JA | Joint Appendix |
| Jarkesy | George R. Jarkesy, Jr. and Patriot28, LLC |
| Order Instituting Proceedings | Order Instituting Public Administrative and Cease-and-Desist Proceedings |
| SEC | United States Securities and Exchange Commission |
| Securities Act | Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.* |
| § 25(a) | Statutory review sections collectively: 15 U.S.C. § 78y(a), 15 U.S.C. § 80a-42, 15 U.S.C. § 80b-13, and 15 U.S.C. § 77i(a). |

## SUMMARY OF ARGUMENT

The U.S. Securities and Exchange Commission ("SEC") has not even attempted to rebut Jarkesy's substantive constitutional claims, instead devoting all of its argument to the asserted lack of subject matter jurisdiction. But Jarkesy's facial constitutional claims are ripe for review now, and a remand to the district court would only waste judicial resources and subject Jarkesy to continued constitutional injury in an administrative proceeding which is void.

The SEC's jurisdictional arguments—and the cases it cites in support—do not apply to the unique claims raised in this suit and the narrow scope of the review procedure available in SEC administrative adjudications. The challenges raised in this appeal are completely collateral to the subject matter and conduct of this administrative proceeding and beyond the statutory reach of the special review process. All of the claims arise exclusively from matters occurring *outside* of the administrative proceeding and require adjudication of issues the SEC is not statutorily permitted to decide. These claims do not seek any review of the "final order" of the Commission, the sole function of the statutory review scheme.

Following its *TRAC* decision, this Court should rule on these claims now and exercise its jurisdiction under the All Writs Act and issue a writ of mandamus directing the SEC to terminate the proceeding against Jarkesy.

1

## **INTRODUCTION**

In its brief, the SEC continues to distort the claims raised by Appellants George R. Jarkesy, Jr. and Patriot28, LLC ("Jarkesy"), as it did in the district court[1] and before the motions panel in this Court.[2]  The SEC spends much of its briefing recasting Jarkesy's arguments into claims Jarkesy has never made but ones the SEC finds easier to rebut.[3]  As a result, the SEC evades and recasts Jarkesy's claims before this Court in order to assert that this suit prematurely challenges the adjudication of SEC enforcement charges reserved for the administrative process.

But Jarkesy is not complaining in this Court about the securities fraud allegations, the outcome of the administrative proceedings—which has not yet occurred—or the SEC's process of adjudicating its claims.[4]  Instead, Jarkesy

---

[1]  *See, e.g.,* Joint Appendix ("JA") 263, 220-21, 227-28.

[2]  *See, e.g.*, Appellee's Motion for Summary Affirmance and Opposition to Appellants' Motion for Expedited Consideration at 4, 9-10 (filed Sept. 25, 2014) (ECF No. 1514130).

[3]  Among the claims that the SEC has falsely attributed to Jarkesy in this appeal are that *any* challenge to an agency's administrative process can be brought outside the special statutory review procedure, Brief of Defendant-Appellee U.S. SEC ( "SEC Br.") at 14; that Jarkesy is complaining of "total preclusion" of judicial review of any challenges to an agency's administrative process, SEC Br. at 14-15; that Jarkesy "was deprived of due process because of the speed of the Commission's proceedings," SEC Br. at 42; and that "the Enforcement Division violated its *Brady* obligations." *Id.*

[4]  Indeed, Jarkesy is complaining about many evidentiary and procedural errors in the administrative hearing, and throughout the administrative proceeding, in his pending appeal to the Commission.  *See* Petition for Review, *In re John Thomas*

2

challenges the constitutional validity of the proceeding and of the statute the SEC relies upon in prosecuting the proceeding against Jarkesy.

This suit has nothing to do with whether Jarkesy is culpable of the securities law violations alleged in the administrative proceeding. Sustaining his claims would only result in a return of the parties to the *status quo ante*, before the moment when the Commission decided to subject him to its enhanced administrative enforcement process instead of the neutral forum of an Article III court. Jarkesy's claims—all of which arise from actions occurring *outside* of the SEC's administrative process—are "collateral" to the administrative proceeding.

Throughout its brief the SEC makes much of Jarkesy's numerous attempts to pursue these constitutional issues before the Administrative Law Judge ("ALJ") and the Commission, suggesting that Jarkesy views these issues as appropriate for adjudication by the SEC. In its brief, however, the SEC does not mention that the agency rebuffed—successfully—all of Jarkesy's attempts to develop these constitutional claims, and that Jarkesy was required to present the issues to "preserve error" on them pursuant to SEC Rule of Practice 410 (17 C.F.R. § 201.410) in the event that this suit was delayed or ultimately unsuccessful. Jarkesy's attempts to create a record on these claims during the administrative

*Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, et al.*, No. 3-15255 (SEC Nov. 6, 2014), *available at* http://www.sec.gov/litigation/apdocuments/3-15255-event-143.pdf.

proceeding demonstrate the futility of seeking relief through the administrative and statutory review process. Finally, and not surprisingly, the SEC, when confronted with Jarkesy's constitutional arguments before this Court, has elected not to refute them, leaving as its entire objection to Jarkesy's constitutional claims the asserted lack of subject matter jurisdiction. As discussed below, this Court has jurisdiction in this case to revolve Jarkesy's constitutional claims now.

## ARGUMENT

I.   **This Court Should Resolve Jarkesy's Constitutional Claims Under the All Writs Act Pursuant to *TRAC* if the Court Declines to Resolve Those Claims in Exercising Its Appellate Jurisdiction.**

In support of its claim that the district court acted properly in dismissing Jarkesy's action, the SEC repeatedly cites this Court's decision in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), identifying *TRAC* as an authority on which it chiefly relies. *See, e.g.*, SEC Br. at vi, 13 (by "dismissing Jarkesy's suit, the district court correctly avoided the 'duplicative and potentially conflicting review and the delay and expense incidental thereto'," quoting *TRAC*, 750 F.2d at 78). *TRAC* does bear importantly on this case, but not in the way that the SEC imagines. The SEC disregards the broader point of *TRAC*, in which the Court held that, "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that *might affect* the Circuit Court's *future jurisdiction* is subject to the

exclusive review of the Court of Appeals." 750 F.2d at 78-79 (emphases added). For the reasons discussed below, if this Court agrees with the SEC that *TRAC* governs this case, Jarkesy requests, as alternative relief, that the Court exercise jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and issue a writ of mandamus directing the SEC to terminate the proceeding against Jarkesy.

Jarkesy's constitutional claims are collateral to the securities law issues on the merits being adjudicated before the SEC.  The SEC's authority in administrative enforcement proceedings is limited to adjudicating claims arising under the securities laws and the Commission's regulations. *See infra* pp. 11-17. Jarkesy's claims in this case—Dodd-Frank's delegation of expanded administrative enforcement authorities violated separation of powers, Dodd-Frank's enhanced penalties violate the Seventh Amendment, SEC's prejudgment of Jarkesy's case denied due process—are ripe for judicial resolution now.

The first two claims raise questions regarding the facial constitutionality of provisions of Dodd-Frank expanding SEC's administrative enforcement authorities.  They both present pure questions of law that may be resolved without any factual development.  No justification exists for postponing their resolution to allow the SEC to pass on them.  Only Article III courts can declare statutes of Congress unconstitutional, and this Court does not need an advisory opinion from the SEC to decide a facial constitutional challenge.  The third claim – prejudgment

5

– is also a pure question of law: Did the pre-hearing public release of findings by the full Commission that Jarkesy violated the securities laws deny Jarkesy due process? With respect to this claim, this Court hardly needs to hear from the SEC. By issuing these findings the Commission made its position clear. Its collective mind was made up before the proceeding delegated to the ALJ even began. Finally, the point that the findings were not "binding" is silly. SEC Br. at 7 n.1. A prejudicial speech by a Commissioner was not "binding" on anyone but was sufficient for this Court to find unconstitutional prejudice. *See Texaco, Inc. v. FTC,* 336 F.2d 754 (D.C. Cir. 1964), *vacated on other grounds*, 381 U.S. 739 (1965); *Cinderella Career & Finishing Schs., Inc. v. FTC,* 425 F.2d 583 (D.C. Cir. 1970).

Surprisingly, the Commission devotes its brief to establishing the unremarkable principle that Circuit Courts have exclusive jurisdiction to review final orders of the SEC arising out of administrative enforcement proceedings. Jarkesy agrees. However, the only relevance of that principle to this case is whether this Court should address Jarkesy's constitutional claims under the All Writs Act to protect future judicial review authority or should address them in the exercise of its appellate jurisdiction. Either outcome calls for resolution of those claims now.

To address the jurisdictional question raised by the district court's dismissal, this Court must engage *de novo* Jarkesy's constitutional claims and, if the Court

finds that the district court had jurisdiction over one or more meritorious collateral constitutional claims, the district court should be directed to enjoin the ongoing proceedings. *See*, *e.g.*, *Grace v. Burger*, 665 F.2d 1193, 1197 n.9 (D.C. Cir. 1981), *aff'd in part, vacated in part*, *United States v. Grace*, 461 U.S. 171 (1983) ("While '[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below' . . . '[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.' . . . . We believe that this is such a case. . . . [S]ince appellants challenge the constitutionality of § 13k on its face, the resolution of this issue is purely one of law, appropriate for appellate review. . . .  For these reasons, we believe that a remand to the District Court, which inevitably would result in a future appeal to his court, 'would be a waste of judicial resources.'") (citations omitted).

In deciding *Grace*, the Court relied on *Singleton v. Wulff*, 428 U.S. 106, 121 (1976), where the Supreme Court underscored the discretion left to the circuit courts in addressing clear constitutional deprivations:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where "injustice might otherwise result." *Hormel v. Helvering*, 312 U.S. [552] at 557, 61

7

S.Ct. at 721 [1941]. (citations omitted).

The Court has long recognized that the All Writs Act also "includes the traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress and prevent impairment of the effective exercise of [future] appellate jurisdiction." *FTC v. Dean Foods Co.,* 384 U.S. 597, 604 (1966). Consistent with this Court's expedited review of this case, the facial constitutional issues presented by Jarkesy concern integral adjudicatory powers routinely exercised by the SEC since 2010, and affect the validity of ongoing proceedings against other individuals and companies—both registered and unregistered. Resolution of the proper constitutional contours of the SEC's enforcement authority and procedures is of pressing interest to the SEC, the financial services industry, and the general public. *See also, United States v. Sheehan*, 512 F.3d 621, 628 (D.C. Cir. 2008).

On the other hand, if this Court finds that Jarkesy's constitutional claims do not fall within the "small category of cases … [where] adjudication of the claim in the District Court will not affect any future statutory review authority of the Circuit Court," *TRAC*, 750 F.2d at 78, this Court should issue a writ of mandamus to the SEC terminating the proceeding against Jarkesy. Whether the case is disposed of under the All Writs Act or in the exercise of this Court's appellate jurisdiction, this Court should resolve Jarkesy's constitutional claims in this case now.

8

In *TRAC* (and a companion case on appeal from the district court), this Court addressed its jurisdiction under the All Writs Act to resolve "unreasonable delay" claims.  Recognizing that "unreasonable delay" involves nonfinal agency action, the Court noted that the "clear legislative preference for review of final action" required the Court to "be circumspect in exercising jurisdiction" over nonfinal agency action.  *Id*. at 79.  That principle, however, did not apply where there was "no doubt" that the "claims concern[ed] nonfinal agency action (or inaction) that might affect" the Court's "future statutory review of final agency action."  *Id*.  In which case, the Court had "present jurisdiction to hear [those] claims.…"  *Id.*  *TRAC* illustrates that the authority of the Court to exercise jurisdiction under the All Writs Act exists in cases invoking the Court's original jurisdiction or in disposing of an appeal from a district court.  *Id.* at 72 & 74 n.22.

The "rare instances … [where] a non-final agency action [may be] reviewed in the teeth of a general denial of jurisdiction" include "cases of '"clear right" such as outright violation of a clear statutory provision . . . or *violation of basic rights established by a structural flaw*, and not requiring in any way a consideration of the interrelated aspects of the merits.'"  *Id.* at 79, quoting *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1178, 1180 (D.C. Cir. 1979) (Leventhal, J., concurring) (emphasis added).  Jarkesy's case falls squarely within the category of cases described in *TRAC*.

9

Jarkesy has brought a case of "clear right" in which he alleges that his "basic rights" under the U.S. Constitution have been violated. His claims are ripe for resolution now, and are independent of the merits in the administrative proceeding. Finally, if resolution of these claims may be said to affect this Court's future jurisdiction to review any SEC enforcement order arising out of the ongoing SEC proceedings against Jarkesy, as the SEC argues at length, then this Court has jurisdiction under the All Writs Act to resolve these claims now. The question whether this extraordinarily-rushed administrative enforcement proceeding can, or cannot, continue to go forward is simply the "flip side" of the "unreasonable delay" question in *TRAC* regarding whether or not to require completion of delayed administrative proceedings. Far from supporting the SEC's argument that this Court should affirm the district court's dismissal of Jarkesy's suit, *TRAC* establishes for this Court a clear path to resolution of the constitutional claims raised by Jarkesy.

## II.    The District Court Had Subject Matter Jurisdiction to Hear Jarkesy's Constitutional Claims.

The SEC is wrong in its assertion that the district court lacked subject matter jurisdiction to entertain Jarkesy's constitutional claims. The district court was vested with jurisdiction to hear these unique constitutional claims.

In its brief, the SEC focuses almost entirely on a statutory review scheme that is not applicable to these claims. In doing so it relies on case precedents that

10

pertain to other special review schemes, not the unique review process applicable to Jarkesy.   To be sure, exhaustion jurisprudence is hardly a model of clarity, but perhaps the only certainty is this:  subject matter jurisdiction and the applicability of exhaustion requirements must be assessed on a case-by-case basis, taking into account the unique review scheme imposed by statute on the subject agency in light of the precise nature of the claims raised by a particular plaintiff.

Disregarding this reality, the SEC anchors its arguments against subject matter jurisdiction on analysis of statutory review schemes which are qualitatively different from the review scheme used in SEC administrative appeals, and consistently cites cases where plaintiffs are seeking no more than an "end run" around the agency procedures.  The contrast between the SEC's cited cases and the present case could not be more stark.

As discussed in Jarkesy's principal brief ("Jarkesy Br."), the special statutory review scheme established by Congress for SEC administrative appeals is found at § 25(a) of the Securities Exchange Act of 1934 ("§ 25(a)" or "Exchange Act"), 15 U.S.C. § 78y(a),[5] imposing the terms and procedures for review of

---

[5]  The wording of the comparable provisions in the Investment Company Act of 1940 ("Company Act") (15 U.S.C. § 80a-42) and the Investment Advisers Act of 1940 ("Advisers Act") (15 U.S.C. § 80b-13) is identical.   The comparable provision in the Securities Act of 1933 ("Securities Act") is identical except it does not include the phrase "entered pursuant to this title." 15 U.S.C. § 77i(a).   The shorthand "§ 25(a)" is used hereinafter to refer collectively to these special review statutes.

11

Commission final orders. The full statutory scheme established by these securities acts provides for the Commission review of an SEC administrative proceeding and the Initial Decision of an SEC ALJ, culminating in turn with the § 25(a) circuit court review of a "final order" of the Commission.

But the § 25(a) review scheme does not bar resolution of Jarkesy claims that are ripe for review now and result in a present and continuing denial of his constitutional rights. Regarding his equal protection claim, the SEC has no authority to adjudicate that claim, making any record on review inadequate. District court jurisdiction existed under the *Free Enterprise*/*Thunder Basin* doctrine to resolve all of Jarkesy's constitutional claims.[6]

### A.    The Challenges Arise From Commission Actions Outside the Scope of the Administrative Proceeding and Therefore Outside the Purview of the Statutory Review Scheme.

Every one of Jarkesy's constitutional claims—the actual claims raised in the court below and in this Court on appeal—ripened from Commission actions that occurred *prior to or outside of the formal administrative proceeding*. Jarkesy's separation of powers, Seventh Amendment, and Fifth Amendment equal protection claims were all manifested by the Commission's March 22, 2013, decision to cast him into its internal courts. His Fifth Amendment Due Process claim for Commission pre-judgment complains of an order entered by the Commissioners in

---

[6]  *See* Jarkesy Br. at 46-60.

resolving *another party's case*.  In this appeal, Jarkesy is not complaining about *anything* that happened as part of, and during the pendency of, the administrative proceeding against him.

Jarkesy's action in the court below, and his appeal in this Court, are not seeking review of the Commission's "final order," the sole subject matter permitted for statutory review under § 25(a).  Rather, he is seeking review of constitutional violations arising out of the Commission decision to order that Jarkesy be subject to summary trial in its internal courts under a statute that authorizes adjudication of immense administrative penalties in violation of the Seventh Amendment.[7]  His claims are therefore outside the statutory scope of the § 25(a) review scheme, rendering that scheme inapplicable to these claims.[8]

---

[7]  To be clear, Jarkesy is *not* in this suit attacking "agency discretion" in the decision to take enforcement action against him; he is challenging the unconstitutional grant of the legislative authority that empowered the choice of forum and the unconstitutional manner in which that choice was exercised.

[8]  Chapter 7 of the Administrative Procedure Act ("APA") contains a "generous" waiver of sovereign immunity for suits against federal agencies and channels such actions either through special statutory review schemes or—where such schemes do not apply or would be "inadequate" for litigation of a particular claim—any form of legal action (including actions for mandamus relief) in a court of competent jurisdiction. *See* 5 U.S.C. § 703.  This is just such a case.  Further, under this Circuit's precedents the § 703 waiver of sovereign immunity applies to Jarkesy's claims even though the special statutory review procedures and the other Chapter 7 procedures do not.  *See Trudeau v. FTC,* 456 F.3d 178, 186 (D.C. Cir. 2006) ("the 'APA's waiver of sovereign immunity applies to any suit whether under the APA or not'[,]" quoting *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996)).

13

These claims fall outside the scope of the § 25(a) review process for another reason as well: the issues raised here are not within the subject-matter purview of the SEC's circumscribed statutory authority and therefore the permissible subject matter of the special statutory review.

In its brief the SEC quotes from § 25(a) but omits—using ellipses—the defining phrase which contrains the scope of this special statutory review.  SEC Br. at 4.  Section 25(a)(1) provides:

> A person aggrieved by a final order of the Commission ***entered pursuant to this title*** may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after entry of the order, a written petition requesting that the order be modified or set aside in whole or in part (emphasis added).

15 U.S.C. § 78y(a)(1) (emphasis supplied to identify language omitted in SEC's brief).[9]  Although circuit courts have broad authority to review matters that arise in agency administrative proceedings, as set forth in the APA,[10] the SEC's authority to adjudicate claims in administrative proceedings is quite narrow.  The SEC only has authority to adjudicate in administrative proceedings suspected violations of the federal securities laws against third parties over whom it has jurisdiction.  *See generally*, 15 U.S.C. §§ 77t, 78u, 80a-41, and 80b-9.  This excludes all other

---

[9]  *See supra* p. 10 n.5.

[10]  5 U.S.C. § 706.

subject matter from the SEC's adjudicatory power, including constitutional claims.[11] *Id.*

It is clear from the plain language of the statutes that the limited authority granted to the SEC by Congress to adjudicate claims in administrative proceedings ***does not*** include constitutional claims and a long list of other claims, like tax violations, tort claims, common-law fraud claims, breach-of-contract claims, Equal Employment Opportunity Act claims, or violations of the environmental laws. *See generally,* 15 U.S.C. §§ 77i(a), 78y(a), 80a-42, and 80b-13.

Congress also did not grant the SEC authority to adjudicate any counter claims in administrative proceedings. *Id.*; 17 C.F.R. §§ 201.200-210.  The reason for this difference from federal court actions is obvious: no one can be expected to fairly adjudicate one's own liability or conduct in preserving or trampling someone's constitutional rights. *See Amos Treat & Co. v. SEC,* 306 F.2d 260, 263 (D.C. Cir. 1962), quoting *In re Murchison,* 349 U.S. 133, 136 (1955) (due process requires '"an absence of actual bias in the trial of cases'"); *see also, Murchison,*

---

[11]  This point was conceded recently by an SEC ALJ who expressed "grave doubts" that equal protection and due process claims are "justiciable in this forum," finding a "lack [of] authority to afford [respondent] any relief" on those claims. *In re David F. Bandimere & John O. Young*, Admin. Proc. File No. 3-15124, Initial Decision as to David F. Bandimere, Release No. 507 at 75-77 (Oct. 8, 2013), *available at* http://www.sec.gov/alj/aljdec/2013/id507ce.pdf.

349 U.S at 136, quoting *Offutt v. United States,* 348 U.S. 11, 14 (1954) ("'justice must satisfy the appearance of justice.'").

The Supreme Court has declined to imply authority in the federal securities laws, or to expand their scope beyond the plain language of the statutes. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994), the Court held that there was no implied private right of action for aiding-and-abetting liability under Section 10(b) of the Exchange Act. The Court resolved the case by reference to the statutory text and recited its history of adherence to the language of the statutes. *Id.* at 164. The Court concluded that, if Congress did not explicitly grant the authority in that statute, it did not exist. This principle of strict construction applies with equal force to the SEC in its enforcement of the securities laws. *See SEC v. Bolla*, 550 F. Supp. 2d 54, 59 (D.D.C. 2008) (vacating judgment for imposition of civil penalty based on aiding-and-abetting liability due to lack of express statutory authority).

While the circuit court reviewing a Commission final order in a § 25(a) review is armed with all of the remedial tools outlined in 5 U.S.C. § 706, it is only permitted to apply those tools to reviewing the Commission's final decision against the administrative record shaped by the agency, which is itself restricted to the narrow subject matter dictated by Congress in the securities acts. In the absence of express statutory procedures to the contrary, the Supreme Court has advised such

16

review shall be confined to "the extensive administrative record already made" by the agency. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). Because Congress has not seen fit to explicitly grant the SEC the power to adjudicate constitutional claims in administrative proceedings, there will be no administrative record on these issues to review.

For these reasons, Jarkesy is not only *permitted* to pursue his constitutional challenges outside of the SEC's administrative process and § 25(a), he is *required* to do so.

**B.      To the Extent the *Free Enterprise*/*Thunder Basin* Factors Apply, the District Court Had Jurisdiction to Hear Jarkesy's Claims.**

**1.      Jarkesy Cannot Obtain Meaningful Judicial Review.**

The SEC relies heavily on *Elgin v. Department of the Treasury*, --- U.S.---, 132 S. Ct. 2126 (2012), in support of its contention that Jarkesy can somehow obtain "meaningful" review of his as-applied constitutional claims, but only by citing the expansive evidence-gathering tools available in *Elgin* under the Civil Service Reform Act, 5 U.S.C. §§ 1101, *et seq*. SEC Br. at 35. The Civil Service Reform Act does not apply to SEC statutory review proceedings.

The SEC's reliance on *Elgin* is misplaced. The *Elgin* Court was confronting a constitutional challenge to an employment action before the Merit Systems Protection Board, an agency vested with extensive discovery procedures by special statutory grant, evidence-gathering and record-creating procedures which are

17

unavailable in SEC administrative proceedings under § 25(a).  In contrast, 5 U.S.C. § 1204(b)(1)–(2) provides that the Merit Systems Protection Board  may administer oaths, examine witnesses, take depositions, issue interrogatories, subpoena testimony and documents, and otherwise receive evidence when a covered employee appeals a covered adverse employment action, discovery procedures which rival those available in federal court.  It is thus not surprising that the *Elgin* Court determined that the "review scheme fully accommodates potential need to establish facts relevant to his constitutional challenge to a federal statute," allowing him to obtain "meaningful" review of his claim.  132 S. Ct. at 2138, 2139.  Moreover, the Civil Service Reform Act places no restrictions on the Board's jurisdiction over its proceedings,[12] and 5 U.S.C. § 7703(a) does not contain the qualifying language defining review jurisdiction found in § 25(a).  The *Elgin* Court's conclusions only underscore the distinctive nature of each statutory review scheme and the lack of any meaningful review opportunity in Jarkesy's case.

The SEC's fanciful assertion that Jarkesy could have subpoenaed witnesses or documentary evidence to support his constitutional claims before the ALJ—

---

[12]  The Civil Service Reform Act makes Merit Systems Protection Board jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue. *See Elgin*, 132 S. Ct. at 2130, 2133-34, 2137 (stating that "[t]he Board has jurisdiction over appeals from agency actions"); *see also* 5 C.F.R. § 1201.3(a) enumerating covered actions.

which he attempted—is disingenuous at best, considering the agency's successful resistance to the issuance of those subpoenas as bearing "absolutely no relevance" to the SEC administrative process.[13]   Indeed, the agency fought consistently to deny Jarkesy access to any evidence in support of these claims, and *all* of Jarkesy's efforts to compel production—using the scant procedures available—were soundly rebuffed by both the ALJ and the Commission.[14]

The agency cannot reconcile—and does not attempt to reconcile—its repudiation and disallowance of this evidence for irrelevance to Jarkesy's claims in the context of its administrative proceeding with its belated claim now that its scheme "affords [Jarkesy] … multiple avenues to establish a record with facts necessary for an appellate court to resolve [his] claims."  SEC Br. at 35.[15]  The SEC's reliance on *Chau v. SEC,* No. 14-cv-1903 (LAK), 2014 WL 6984236, at *2-6, 14 (S.D.N.Y. Dec. 11, 2014), for the proposition that Jarkesy's evidence-based constitutional claims "will be ripe for appellate examination" upon statutory

---

[13]  *See* JA 264.

[14]  *See* Jarkesy Br. at 53; JA 264.  In fact, the ALJ held the subpoenas in support of the constitutional claims to be "unreasonable," a ruling that was later upheld by the Commission.

[15]  The Supreme Court long ago rejected the SEC's articulation of one basis for its actions in the administrative context while taking an inconsistent position later in court when it better served its purposes.  *See SEC v. Chenery Corp.,* 318 U.S. 80, 90 (1943).  The agency must be held to the positions it staked out during the administrative proceeding—that Jarkesy was not entitled to press these constitutional claims in the context of the administrative proceeding to which the Commission chose to subject him.

review misses the point entirely: "Ripeness" for "appellate examination" upon an empty evidentiary record is not a "meaningful" review. *Id*. at *11.

The SEC admits that the Commission "has broad authority to shape and supplement the administrative record." SEC Br. at 36. It is in large part the Commission's ability to "shape" the record, even upon remand from a statutory appeal, which prevents Jarkesy from obtaining a "meaningful" review of his "as applied" constitutional claims. Moreover, the SEC's "broad authority to shape and supplement the record" is limited to the very narrow subject matter of violations of the securities laws. In a § 25(a) appeal the circuit court is confined to "review of the order" of the Commission—which in turn admittedly "shapes" the record and exercises plenary power to fashion orders for subsequent circuit court review, including, as here, orders *pertaining to its own alleged misconduct*.

Jarkesy's equal protection claim illustrates the incongruities in attempting to meaningfully litigate a constitutional claim in a statutory review process through remand to the SEC. A successful plaintiff must establish, *inter alia*, facts showing that the defendant agency and its agents knew or should have known there was no rational basis for their actions and that the agency's action was motivated by an improper, irrational or discriminatory purpose, issues which are fact-intensive and require substantial discovery. In the administrative arena, there is no provision for Rule 26 conferences and disclosures, no process for service of requests for

20

production of documents on the agency and third parties, no independent judge to rule on privilege and other discovery disputes, no ability to make requests for admissions, no right to subpoena and take depositions of witnesses, no way to present expert testimony before a neutral factfinder, no process for the filing and adjudication of a motion for partial or complete summary judgment, and, of course, no right to demand a jury.  All of these tools are normally used to successfully prosecute an equal protection claim, but none of them are available in the SEC's spartan administrative process—and few are feasible even under the most creative remand order from a circuit court.

These claims cannot be fairly or "meaningfully" litigated in the circumscribed § 25(a) statutory review scheme.

### 2. Jarkesy's Claims Are "Wholly Collateral" to the Administrative Proceeding.

In arguing that Jarkesy's suit is not "wholly collateral" to the statutory review scheme, the SEC once again relies on *Elgin* and other cases which establish that the *Free Enterprise* assessment must be based on the unique claims and particular statutory review scheme applicable to the case at hand.  The SEC misunderstands the very nature of Jarkesy's claims, all grounded upon challenged statutory authority and agency actions occurring *outside of the SEC administrative proceeding.*  Because none of the challenged events transpired in the

21

administrative proceeding against Jarkesy, there will—virtually by definition—be no administrative record for review under the statutory scheme.

The SEC's "statutory review scheme" encompasses Commission review of all of the proceedings delegated to the SEC's ALJ, and then circuit court review of the Commission's final order "entered pursuant to" the Exchange Act, Advisers Act and Company Act. Nowhere has Congress authorized the Commission to adjudicate extraneous issues not related to the adjudication of the alleged violations or not otherwise occurring at all in the administrative proceeding.

Although left unmentioned by the SEC, the *Elgin* Court distinguished the expansive Civil Service Reform Act review process from others, like the Immigration and Naturalization Service ("INS") or SEC review schemes, which are far more circumscribed by statute. In doing so, the Court reaffirmed its holding in *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991), that exhaustion of remedies is not required where the "statutory review scheme…provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims before the administrative body and then restricted judicial review to the administrative record created in the first instance." *Elgin*, 132 S. Ct. at 2139 n.11, citing *McNary*, 498 U.S. at 493. The Court reached a different conclusion in *Elgin* only because "the [Civil Service Reform Act] review process is not similarly limited." *Id.*

22

The § 25(a) review process *is* similarly limited.  The *McNary* Court explained that the INS review process in that case was "based solely upon the administrative record established at the time of the review by the appellate authority" and that the review statute, the Immigration Nationality Act § 210(e)(3)(B), 8 U.S.C. § 1160(e)(3)(B), provided that the INS factual determinations "shall be conclusive," subject to review under an abuse of discretion standard, 498 U.S. at 493, essentially identical to the "substantial evidence" standard of circuit court review of the Commission's "conclusive" findings embodied in § 25(a)(4).  *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) ("the substantial evidence test and the arbitrary or capricious test are one and the same").

The *McNary* Court based its conclusion on the unlikelihood "that a court of appeals would be in a position to provide meaningful review of the type of claims raised in [the] litigation."  498 U.S. at 497.  To establish the claims, plaintiffs would have to adduce "a substantial amount of evidence, most of which would have been irrelevant in the [administrative proceeding]."  *Id.*  Not only would a court of appeals in a special statutory review scheme therefore "most likely not have an adequate record as to the [claimed] . . . unconstitutional practices, but it also would lack the factfinding and record-developing capabilities of a federal

district court." *Id.* Given that "district court factfinding is essential" to properly adjudicate such claims, precluding district court jurisdiction "is the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims." *Id.*

The SEC also cites *Heckler v. Ringer*, 466 U.S. 602 (1984), for the proposition that Jarkesy's claims are not collateral because he is really just attempting to obtain the same relief to which he would be entitled by pursuing his claims through the administrative review scheme. SEC Br. at 39-40. But the SEC is misconstruing both the nature of its own administrative procedures and the effect of Jarkesy's claims, which seek to invalidate the *pre*-administrative proceeding decision by the Commission to cast him into the administrative process in the first place.[16] Jarkesy's constitutional claims are not an end-run attempt to secure a ruling that he is not culpable of the securities law violations alleged in the Order Instituting Proceedings, the best outcome he could secure before the Commission and the circuit court upon statutory review. The *McNary* Court distinguished *Heckler* from cases such as Jarkesy's by noting that the plaintiffs there were not

---

[16] The prejudgment claim establishes the whole proceeding as void, ultimately obtaining the same end result—restoring the parties to the *status quo ante*, prior to the issuance of the Order Instituting Proceedings. The Supreme Court has long held that exhaustion principles do not apply where the claim involves agency prejudgment, since in such cases it would be futile to litigate the claim administratively. *See Gibson v. Berryhill,* 411 U.S. 564, 575 n.14 (1973); *Houghton v. Shafer,* 392 U.S. 639, 640 (1968) (per curiam).

seeking a substantive victory regarding their status under the Immigration Control Reform Act; instead, "if allowed to prevail in this action, respondents would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed INS procedures." 498 U.S. at 495.

Just as in *McNary*, sustaining Jarkesy's claims will effectively return to the moment in time before the Commission made the unilateral and unconstitutional decision to relegate adjudication of its allegations to its internal courts. The essence of Jarkesy's claims, and the availability of this alternative avenue for prosecuting its claims against Jarkesy—although far less desirable to the SEC— completely distinguishes all of the cases cited by the SEC in its effort to convince this Court that Jarkesy's claims are not collateral to its securities fraud claims.

As in *McNary*, the administrative proceeding and statutory review process did not afford Jarkesy the opportunity "to develop a factual record relevant to [his] constitutional claims before the administrative body and then restricted judicial review to the administrative record created in the first instance." *Elgin*, 132 S. Ct. at 2139 n.11, citing *McNary*, 498 U.S. at 493. As in *McNary*, Jarkesy is entitled to have his claims heard by a district court.

### 3.    The Constitutional Claims are Outside the SEC's Expertise.

In asserting the SEC's expertise regarding Jarkesy's claims, the SEC's brief mischaracterizes every single claim pressed by Jarkesy before this Court in an

effort to recast the issues as mundane questions of agency practice and procedure. SEC Br. at 42-44.  The SEC's argument offers a rejoinder to claims that Jarkesy is not making,[17] attempts to rebut distorted versions of claims that Jarkesy *is* making,[18] and ignores the rest.[19]  In doing so, the SEC avoids addressing the Commission's lack of proficiency (and lack of statutory authority) in deciding grave constitutional questions such as those raised in Jarkesy's actual claims before this Court.

Whether the Commission possesses the expertise for adjudicating constitute-ional issues is a question that has been conclusively resolved by the Supreme Court:  In *Free Enterprise Fund v. Public Co. Accounting Oversight Board* the Court held flatly that "constitutional claims are ... outside the Commission's competence and expertise."  561 U.S. 477, 491 (2010).

---

[17]  The SEC wrongly asserts that Jarkesy is claiming in this Court that "he was deprived of due process because of the speed of the Commission's proceedings"; that "he could not develop an adequate factual record"; and that "the Enforcement Division violated its *Brady* obligations."  SEC Br. at 42.

[18]  The SEC mischaracterizes Jarkesy's due process claim that the administrative proceeding is void for Commission prejudgment as one merely contending that "his co-respondents' settlement agreement prejudged his case."  SEC Br. at 43. The SEC similarly recasts Jarkesy's separation of powers claim as one only asserting "that the Commission has no guidelines for choosing whether to proceed administratively or in district court."  *Id.*  Stripping these claims from their constitutional moorings, the SEC re-characterizes the claims as only involving matters of "agency policy."  *Id.*

[19]  The SEC makes no mention of Jarkesy's Seventh Amendment claim and makes no reference generally to the constitutional infirmities of Dodd-Frank.

The Supreme Court's longstanding emphasis on the expertise or lack of expertise of the agency in a statutory review scheme underscores the integral role played by the agency's decisionmakers in that scheme. That a circuit court can craft evidence-gathering orders on remand to an agency in a statutory appeal does not alone render the review scheme adequate. Otherwise there would be no need for the vast array of litigation over claims exhaustion and subject matter jurisdiction; exhaustion would be required in every case. The reality is that the Commission admittedly "shapes the record," even on remand, and the circuit court is required by § 25(a) to then review the *resulting order as fashioned by the agency*. Where the agency lacks the expertise and the procedural tools—or the statutory jurisdiction—to internally litigate complex constitutional claims, the review scheme simply cannot serve as the substitute for the "essential" discovery and adjudicatory process of district court factfinding. *McNary*, 498 U.S. at 497.

The district court erred in concluding that it lacked subject matter jurisdiction over the claims raised in this appeal.

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

Jarkesy's claims are truly "collateral" to the issues being litigated in the ongoing SEC administrative proceeding, and this Court—as well as the district court—have jurisdiction over them. With the exception of the equal protection claim, all of Jarkesy's constitutional claims are ripe for review. The SEC has

shown that it is unwilling or unable to address Jarkesy's claims, and this Court should decide them as a matter of law, using the Court's appellate jurisdiction without remand to the district court, to avoid wasting judicial resources. Alternatively, Jarkesy requests that the Court exercise jurisdiction under the All Writs Act, as it did in *TRAC*, and issue a writ of mandamus directing the SEC to terminate the proceeding against Jarkesy. Either approach will relieve the ongoing, irreparable injury Jarkesy has suffered, and continues to suffer, due to the ongoing constitutional violations. If the Court does not grant relief terminating the SEC proceeding, Jarkesy has a right, with respect to the equal protection claim, to engage in what the *McNary* Court called the "essential" discovery and adjudicatory process of district court factfinding. There is no statutory remand procedure that can adequately develop the evidentiary foundation of the claim inside the SEC. Accordingly, Jarkesy requests remand to the District Court to develop a record relating to his equal protection claim.

This Court has noted previously that a constitutional deprivation, "'for even minimal periods of time, unquestionably constitutes irreparable injury'." *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009), quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Jarkesy seeks resolution of his ripe claims without further delay.

28

Respectfully submitted,

/s/ S. Michael McColloch

S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
1717 McKinney Avenue, Suite 700
Dallas, Texas  75202
(214) 593-6415 (phone)
(214) 593-6410 (fax)
smm@mccolloch-law.com (email)

Karen Cook
KAREN COOK, PLLC
1717 McKinney Avenue, Suite 700
Dallas, Texas  75202
(214) 593-6429 (phone)
(214) 593-6410 (fax)
karen@karencooklaw.com (email)

Mark B. Bierbower
HUNTON & WILLIAMS, LLP
2200 Pennsylvania Avenue NW
Washington, DC  20037
(202) 955-1665 (phone)
(202) 778-2201 (fax)
mbierbower@hunton.com (email)

*Attorneys for Appellants*

Dated:  February 11, 2015     *George R. Jarkesy, Jr. and Patriot28, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the text of the foregoing Appellant's Reply Brief contains no more than 6,968 words, as reported by the word processing system on which it was prepared, including footnotes and citations, and excluding the table of contents, table of citations, glossary, and the other certificates of counsel, in compliance with FED. R. APP. PROC. 32(a) and D.C. CIRCUIT RULE 32(a)(1).

Respectfully submitted,

/s/ S. Michael McColloch

S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
1717 McKinney Avenue, Suite 700
Dallas, Texas  75202
(214) 593-6415 (phone)
(214) 593-6410 (fax)
smm@mccolloch-law.com (email)

Attorney for Appellants
George R. Jarkesy, Jr. and Patriot28, LLC

February 11, 2015

## CERTIFICATE OF SERVICE

I hereby certify that, on this 11th day of February, 2015, I caused the original of the foregoing document to be electronically filed with the clerk of this Court by using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and the service will be accomplished by the appellate CM/ECF system. Pursuant to D.C. CIRCUIT RULE 31(b), I have also caused eight copies of the foregoing document to be filed, by hand delivery, with the clerk of this Court.

Respectfully submitted,

/s/ S. Michael McColloch

S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202
(214) 593-6415 (phone)
(214) 593-6410 (fax)
smm@mccolloch-law.com (email)

Attorney for Appellants
George R. Jarkesy, Jr. and Patriot28, LLC

February 11, 2015